**Dennis GARNER, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 05-16-00707-CR**

Court of Appeals of Texas, Dallas.

Opinion Filed May 10, 2017

Faith Johnson, Susan Hawk, Dallas County District Attorney, Justin Johnson, Dallas County Criminal District Attorney's Office, Messina Barbara Madson, Madson Castello, Dallas, TX, for The State of Texas.

John Daniel Oliphant Jr., Attorney at Law, Dallas, TX, for Dennis Garner.

Before Justices Bridges, Myers, and Boatright

## OPINION

Opinion by Justice Myers

A jury convicted appellant Dennis Garner of continuous sexual abuse of a child younger than fourteen and assessed punishment at life imprisonment. In three issues, appellant contends the evidence is insufficient to support the conviction, the magistrate should not have been allowed to preside over jury selection, and the magistrate erred by limiting the defense's ability to question the jury panel during voir dire. We affirm.

### BACKGROUND

Evidence presented at the guilt/innocence phase of the trial showed the following:

In January of 1980, appellant's then eleven-year-old stepsister and her stepsister's eleven-year-old friend accused appellant of molesting them. Appellant was convicted of sexual abuse of a child as a result of this incident and sentenced to two and one-half years in prison. In 1991, appellant was convicted of aggravated sexual assault of a child under the age of fourteen for molesting his biological daughter, D.M., who was born in 1983. D.M.'s sister, Ashleigh, was born in 1989. Ashleigh, D.M., their younger sister, Natalie, and their older brother, Dennis, were removed from appellant's—their biological father's—household when Ashleigh was about four years of age. Ashleigh had no further contact with appellant until she reestablished contact with him via email when she was in her early twenties.

By the time she reconnected with appellant, Ashleigh had two children of her own: The complainant, K.B., who was born in 2008, and her brother, J.B. Ashleigh and appellant began exchanging text messages and, over time, Ashleigh established a relationship with her biological father and his wife, Pam,[1] celebrating birthdays and holidays together and spending more time with them. Ashleigh testified that she was aware appellant had sexually abused D.M. But she said she did not know the details, nor did she want to know them, and that she wanted to give appellant a second chance: "I just wanted to reach out to him. I wanted—I wanted to know him again. I wanted to give him a second chance from everything people have ever told me growing up what he did. I wanted to know, is this really the man?"

K.B. and J.B. started having weekend visits with appellant and Pam at their Carrollton home in 2014. Ashleigh estimated there were approximately ten such visits. Ashleigh testified that Pam reassured her there was nothing to fear and that, whenever her children stayed with them, Pam would be in charge of bathing and dressing the children. Ashleigh believed Pam would be protective of her children.

At this same time, Ashleigh was having financial problems, struggling to pay $800

---

1. Ashleigh's biological mother, Larri, was deceased.

per month in rent. She mentioned to appellant and Pam that she was having financial troubles, and they suggested Ashleigh and her children could move in with them. On December 15, 2014, Ashleigh, K.B., and J.B. moved in with Pam and appellant.

Ashleigh had a job but no car, so Pam, and occasionally appellant, would pick K.B. up from school. Pam was usually at the house when K.B. got home from school but there were times, according to Ashleigh's testimony, when appellant and K.B. were at the house by themselves. Ashleigh recalled appellant would play dress-up and "Barbies" with K.B., and the two of them "just seemed to have a great connection."

K.B. had received a unicorn pillow as a gift for Christmas in 2014. She kept the pillow on her bed and slept on it. J.B., meanwhile, had gone to live with his father on January 8, 2015; his departure meant that K.B. had a room to herself.

In late January or early February 2015, Ashleigh became involved with a church in Carrollton, and she was attending various membership-related programs on Wednesday and Thursday nights. K.B. was at home with Pam and appellant when Ashleigh was at church. K.B. had just turned six years of age, and she no longer needed assistance dressing or bathing herself. But Ashleigh recalled one occasion where she opened the bathroom door to check on her daughter and found appellant sitting on the toilet facing K.B., who was in the bathtub. Surprised, Ashleigh asked: "What is going on? ... There's no need for you to be in here. She's old enough to bathe herself." Appellant replied, "I just wanted to the [sic] make sure that she was bathing herself correctly, that she got clean." Ashleigh told appellant, "You don't need to be in here," and he left the bathroom. Later, Ashleigh asked K.B., "[W]hy was Pawpaw in here giving you a bath? ... You're old enough to do it yourself."

K.B. responded, "But, Mama, he begged me. I told him I could, but he begged me."

There were times after this incident when appellant and Pam looked after K.B. because Ashleigh was at work or attending church, but Ashleigh's concerns did not subside. Ashleigh shared these concerns with D.M., who suggested the best thing she could do would be "to ask [K.B.] straight up." On Friday, February 13, 2015, Ashleigh got off work early, picked K.B. up from school, and then drove to D.M.'s workplace. They walked over to a nearby pond and, while they waited for D.M.'s shift to end, Ashleigh asked K.B., "Has Pawpaw touched you?" K.B. asked, "What do you mean?" Ashleigh said, "Has Pawpaw touched your privates before," to which K.B. replied, "Yes." Ashleigh asked K.B. to show her how appellant had touched her, and K.B. "demonstrated it ... on the outside of her clothes down by her private area." Ashleigh testified that she called Pam and told her what K.B. had said. Pam's response was, "Do you even believe her?"

Ashleigh and D.M. immediately took K.B. to the Carrollton Police Department, where K.B. was interviewed by a detective. K.B. was taken to the hospital for a sexual assault nurse examination and Child Protective Services was notified. K.B. was forensically interviewed at the Dallas Children's Advocacy Center.

Ashleigh testified that she later learned the sexual abuse had started around "Christmas time," and the last time the abuse occurred was the night before K.B.'s outcry, on February 12, 2015, when Ashleigh was at church. K.B. testified that appellant touched her "bad spot" beneath her underwear when she was in her room lying on a unicorn pillow. During the sexual assault examination, K.B. identified the "bad spot" by circling the vaginal and genital area on a diagram of a small child.

The jury ultimately convicted appellant of continuous sexual abuse of a child under the age of fourteen and assessed punishment at life imprisonment. Appellant filed a motion for new trial that was overruled. This appeal followed.

## DISCUSSION

### 1. Sufficiency of the Evidence

In his first issue, appellant contends the evidence was insufficient to support the verdict. Appellant's argument is that the evidence shows the sexual acts, if any, did not occur during a period of thirty or more days in duration, and the evidence was nonspecific regarding when the sexual acts occurred.

■ A person commits the offense of continuous sexual abuse of a child if, during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse and, at the time of the commission of each act, he is seventeen years of age or older and the victim is a child younger than fourteen. TEX. PENAL CODE ANN. § 21.02(b) (West 2011). Although the exact dates of the abuse need not be proven, the offense does require proof that two or more acts of sexual abuse occurred during a period of thirty days or more. *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.–San Antonio 2016, pet. ref'd); *see* TEX. PENAL CODE ANN. § 21.02(d) (jury not required to unanimously agree on which specific acts of sexual abuse were committed by defendant or exact dates when those acts occurred, but jury must agree unanimously that defendant, during period of thirty or more days, committed two or more acts of sexual abuse).

■ In determining the sufficiency of the evidence, the reviewing court considers the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). The jury is the sole judge of the credibility and weight to attach to witness testimony. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2016); *Lee v. State*, 186 S.W.3d 649, 656 (Tex. App.–Dallas 2006, pet. ref'd).

■ There is sufficient evidence in the record to support the jury's determination that appellant committed the charged offense beyond a reasonable doubt. The evidence showed appellant molested two eleven-year-old girls in 1980, one of whom was his stepsister, and he later molested his biological daughter, D.M., when she was only a child. Evidence also showed it was appellant and his wife who suggested to K.B.'s mother, Ashleigh, that she and K.B. move in with them, and K.B. and her mother moved in on December 15, 2014. There were times when appellant and K.B. were at home alone. K.B. testified appellant touched her "bad spot," which she identified by circling the vaginal and genital area on a diagram of a small child, beneath her underwear when she was in her room lying on a unicorn pillow. Ashleigh testified that K.B. had received a unicorn pillow as a Christmas gift in 2014. Furthermore, Ashleigh testified K.B. did not need help bathing or dressing herself, yet she once saw appellant in the bathroom with K.B. while the child was bathing, and K.B. told Ashleigh that appellant had begged her to allow him to help her bathe. Ashleigh also testified that, after the police started their investigation, she learned "[i]t was around Christmas time that it started happening," and the last act of abuse occurred on Thursday, February

12, 2015, the day before K.B.'s outcry. This testimony, plus the other evidence in the record, is sufficient to show that the acts of sexual abuse occurred during a period of thirty days or more. Deferring to the jury's determination of the credibility of the witnesses and the weight to be given their testimony, based on the cumulative force of all the evidence when viewed in the light most favorable to the verdict, and considering the reasonable inferences to be drawn from that evidence, we conclude a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Appellant's first issue is overruled.

## 2. Magistrate Presiding Over Jury Selection

In his second issue, appellant argues the trial court erred by allowing the magistrate to preside over jury selection.

The district judge referred jury selection to a Dallas County criminal district court magistrate.[2] Both sides objected to the magistrate's presiding over jury selection. The State expressed concern that differences between the magistrate statutes for Dallas and Tarrant counties created "a little bit of a gray area" regarding whether a magistrate in Dallas County could actually preside over jury selection, and appellant concurred in this assessment. These objections were overruled, according to the trial court, "pursuant to Section 54 of the Texas Government Code." The magistrate then presided over jury selection and sustained an objection made by the State to a question defense counsel wanted to ask the

panel (the magistrate's ruling on this objection is the subject of appellant's third issue). The record does not indicate that the magistrate made any other rulings that are being challenged on appeal. The parties struck prospective jurors by agreement; there were no challenges for cause. Neither side objected to the jury or the alternate jurors. The district judge swore in the jury and presided over the remainder of the proceedings.

■ Appellant's issue involves a question of statutory interpretation, which is a question of law we review de novo. *See Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). We begin with section 54.306 of the Texas Government Code, which determines what proceedings may be referred to a criminal law magistrate. It provides:

(a) A judge may refer to a magistrate any matter arising out of a criminal case involving:

(1) a negotiated plea of guilty or nolo contendere before the court;

(2) a bond forfeiture;

(3) a pretrial motion;

(4) a postconviction writ of habeas corpus;

(5) an examining trial;

(6) an occupational driver's license;

(7) an appeal of an administrative driver's license revocation hearing; and

(8) any other matter the judge considers necessary and proper.

---

**2.** There is an order in the clerk's record referring the case to the magistrate for the purpose of "conducting voir dire and jury selection." *See* Tex. Gov't Code Ann. § 54.307(a) (West 2013) (to refer case to a magistrate, district court judge must issue order of referral specifying magistrate's duties); *see also Ex parte DeLeon*, No. 05-11-00594-CR, 2011 WL

3690302, at *2 (Tex. App.–Dallas Aug. 24, 2011, no pet.) (not designated for publication) (because there was no order in record referring case to magistrate, magistrate did not have authority to act) (citing *Ex parte Pardun*, 727 S.W.2d 131, 132–33 (Tex. App.–Dallas 1987, no pet.) (per curiam)).

(b) The magistrate may not preside over a *trial on the merits*, whether or not the trial is before a jury.

TEX. GOV'T CODE ANN. § 54.306 (West 2013) (emphasis added). Section 54.308, which specifies the powers of a magistrate to whom a case has been referred, provides in part:

(a) Except as limited by an order of referral, a magistrate to whom a case is referred may:

(1) conduct hearings;

(2) hear evidence;

(3) compel production of relevant evidence;

(4) rule on admissibility of evidence;

(5) issue summons for the appearance of witnesses;

(6) examine witnesses;

(7) swear witnesses for hearings;

(8) make findings of fact on evidence;

(9) formulate conclusions of law;

(10) rule on a pretrial motion;

(11) recommend the rulings, orders, or judgment to be made in a case;

(12) regulate proceedings in a hearing; and

(13) do any act and take any measure necessary and proper for the efficient performance of the duties required by the order of referral.

*Id.* § 54.308 (West 2013).

The question is whether the phrase "trial on the merits," as it is used in section 54.306(b), includes jury selection. In construing a statute, we give effect to the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended. *Ex parte White*, 506 S.W.3d 39, 42 (Tex. Crim. App. 2016); *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). In determining plain meaning, we consult dictionary definitions, apply the rules of grammar, and consider words in context. *White*, 506 S.W.3d at 42; *Perry*, 483 S.W.3d at 902; *see also* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013). If the statutory language is ambiguous or leads to absurd results, we can consider extratextual factors such as the object sought to be attained, the legislative history, and the consequences of a particular construction. *White*, 506 S.W.3d at 42; *Perry*, 483 S.W.3d at 903; *see also* TEX. GOV'T CODE ANN. § 311.023 (West 2013). The Code Construction Act provides that words and phrases that have "acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011(b) (West 2013).

Appellant directs our attention to section 54.656 of the government code, which identifies proceedings that may be referred to Tarrant County criminal law magistrates. Subsection (d) states: "A magistrate may select a jury. A magistrate may not preside over a criminal trial on the merits, whether or not the trial is before a jury." TEX. GOV'T CODE ANN. § 54.656(d) (West Supp. 2016). Section 54.658, which specifies the powers of a Tarrant County magistrate to whom a case has been referred, similarly provides that a magistrate may "select a jury." *Id.* § 54.658(14) (West 2013). These provisions were amended in 2003 to explicitly allow Tarrant County magistrates to conduct the voir dire portion of a jury trial. *See* Act of May 16, 2003, 78th Leg., R.S., ch. 910, §§ 2, 3, 2003 Tex. Gen. Laws 2738–39 (codified at TEX. GOV'T CODE ANN. § 54.656(d) and § 54.658(14)). Noting the difference between sections 54.656 and 54.658, and sections 54.306 and 54.308, which do not explicitly provide that Dallas County crimi-

nal law magistrates may select a jury, appellant argues that by expressly legislating that Tarrant County magistrates may select a jury, but not so. legislating for Dallas County magistrates, the legislature must have intended to give Tarrant County magistrates more authority.

The legislative history behind the 2003 amendment sheds little light on the question before us. It did more than merely allow Tarrant County magistrates to select a jury. The amendment also reduced the then-required unanimous approval of all criminal judges to each magistrate's appointment to a two-thirds majority, and it allowed magistrates to accept a plea of guilty from those charged only with a misdemeanor, a felony, or both misdemeanor or felony offenses. *See* Act of May 16, 2003, 78th Leg., R.S., ch. 910, §§ 1–3, 2003 Tex. Gen. Laws 2738–39. Most of the discussion in the staff-prepared bill analysis is devoted to the change in the unanimous approval requirement; allowing Tarrant County magistrates to select a jury is mentioned only briefly. *See* Senate Research Center, Bill Analysis, Tex. S.B. 922, 78th Leg., R.S. (2003). Furthermore, in *Nash v. State*, 123 S.W.3d 534 (Tex. App.–Fort Worth 2003, pet. ref'd), which is cited by both parties, Justice Dauphinot mentions in her dissenting opinion that, when the sponsoring senator presented the bill to the jurisprudence committee, "[H]e stated that it was important to pass the legislation because in Tarrant County the magistrates were already sitting-in on the jury selections on a temporary basis." *Id.* at 545 (Dauphinot, J., dissenting). But as the justice acknowledges, the senator's somewhat ambiguous comments are not dispositive on the issue of legislative intent. *See id.*

There is no indication in the legislative history whether the legislature thought it was giving Tarrant County magistrates authority they had previously lacked or merely clarifying what it understood their authority to be. The legislative history behind section 54.306 is no more informative: Subsection (b), which says Dallas County magistrates may not preside over a "trial on the merits," has remained unchanged since 1985, when it was first codified as part of the government code from former article 1918c of the Texas Revised Civil Statutes. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex. Gen. Laws 1720, 2003, eff. Sept. 1, 1985 (codified at TEX. GOV'T CODE ANN. § 54.306).[3]

As the State observes, there are a number of cases concluding, in various contexts, that "trial on the merits" begins when the jury is impaneled and sworn. In *Sanchez v. State*, 138 S.W.3d 324, 325 (Tex. Crim. App. 2004), the Texas Court of Criminal Appeals was attempting to ascertain what article 45.019(f) of the Texas Code of Criminal Procedure meant when it stated that a defendant must object to a defect, error, or irregularity in a charging instrument "before the date on which the trial on the merits commences" in order to avoid waiver and forfeiture of the right to object to the defect, error, or irregularity. The court called the phrase "trial on the merits" a "term of art that specifies a 'distinct phase late in a criminal proceeding.'" *Id.* at 329 (quoting *Tigner v. State*, 928 S.W.2d 540, 544 (Tex. Crim. App. 1996)). The court quoted from Judge Baird's dissent in *State v. Turner*, 898 S.W.2d 303, 310 (Tex. Crim. App. 1995), *overruled on other grounds by Proctor v.*

---

**3.** Prior to the enactment of the government code, section 4(b) of former article 1918c of the Revised Civil Statutes contained a provision quite similar to section 54.306(b): "In no event may a judge refer to a magistrate a criminal case permitting the magistrate to preside over a trial on the merits, either with or without a jury." *Ex parte Stacey*, 709 S.W.2d 185, 186 n.1 (Tex. Crim. App. 1986) (quoting TEX. REV. CIV. STAT. ANN. art. 1918c).

*State*, 967 S.W.2d 840 (Tex. Crim. App. 1998), that "the phrase 'trial on the merits' designates the state of trial where the substantive facts of the case are presented to the factfinder." *Sanchez*, 138 S.W.3d at 329. The court added that "we have found many court of appeals cases standing for the proposition that 'trial on the merits' begins when the jury is impaneled and sworn." *Id.* (collecting cases).

We have cited *Sanchez* for the proposition that "[t]rial begins when the jury is impaneled and sworn." *Slay v. State*, No. 05-04-00505-CR, 2005 WL 1634952, at *3 (Tex. App.–Dallas July 13, 2005, no pet.) (not designated for publication); *see also Washington v. State*, No. 05-11-00417-CR, 2012 WL 2628082, at *2 (Tex. App.–Dallas July 6, 2012, no pet.) (mem. op., not designated for publication) (citing *Sanchez* and noting that jury had already been sworn when juror went to doctor and presented note to trial court, so trial had begun). Other courts have cited *Sanchez* for the same proposition. *See, e.g., Lee v. State*, No. 09-13-00569-CR, 2015 WL 3407001, at *1 (Tex. App.–Beaumont May 27, 2015, no pet.) (mem. op., not designated for publication); *Estrada v. State*, No. 08-04-00365-CR, 2006 WL 2328486, at *2 (Tex. App.–El Paso Aug. 10, 2006, pet. ref'd) (not designated for publication). The federal constitution similarly provides that double jeopardy attaches when the jury is impaneled and sworn. *See, e.g., Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *State v. Moreno*, 294 S.W.3d 594, 597 (Tex. Crim. App. 2009).

Texas courts have also held that, for the purposes of article 36.29(a) of the Texas Code of Criminal Procedure trial "begins"

once the jury is impaneled and sworn. *See* Tex. Code Crim. Proc. Ann. art. 36.29 (West Supp. 2016) (providing in part that "after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict"); *Castro v. State*, 233 S.W.3d 46, 48 n.1 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *accord McClellan v. State*, 143 S.W.3d 395, 399–400 (Tex. App.–Austin 2004, no pet.); *see also Maten v. State*, 962 S.W.2d 226, 227 (Tex. App.–Houston [1st Dist.] 1998, pet. ref'd) (analyzing former version of article 36.29(a) and holding that "[a] case is pending from the moment the jury is sworn to try the case"). In addition, "trial on the merits," as that phrase is used in article 28.10(a), has been held to commence when the jury is impaneled and sworn. *See* Tex. Code Crim. Proc. Ann. art. 28.10(a) (West 2016) (concerning amendment of an indictment or information "before the date the trial on the merits commences"); *Hinojosa v. State*, 875 S.W.2d 339, 342 (Tex. App.–Corpus Christi 1994, no pet.) ("We hold that trial on the merits commences at the time that the jury is impaneled and sworn, i.e., at the same time that jeopardy attaches.") (cited with approval in *Sanchez*, 138 S.W.3d at 329).

We also note that *Black's Law Dictionary*, a traditional resource for courts attempting to interpret undefined statutory terms,[4] provides the following definitions:

*Trial on the merits*: A trial on the substantive issues of a case, as opposed

---

4. *See, e.g., Ex parte Paxton*, 493 S.W.3d 292, 306 (Tex. App.–Dallas June 1, 2016, pet. ref'd) (citing *Black's Law Dictionary* definition of "solicitation" to aid interpretation of word "solicit" in Texas Securities Act); *Plummer v. State*, No. 05-99-01826-CR, 2000 WL 1690194, at *4 (Tex. App.–Dallas Nov. 13, 2000, no pet.) (not designated for publication) (citing *Black's Law Dictionary* definition of "conceal" to aid interpretation of article 32.33 of code of criminal procedure).

to a motion hearing or interlocutory matter;

*Merits*: The elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp. of procedure;

*Voir dire*: A preliminary examination of a prospective juror by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury. Loosely, the term refers to the jury-selection phase of trial.

BLACK'S LAW DICTIONARY, *Trial on the Merits, Merits, Voir Dire* (8th ed. 2004); *see also* MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY, *Trial, Merit, Voir Dire* (1981) (defining "trial" as "the formal examination before a competent tribunal of the matter in issue in a civil or criminal cause in order to determine such issue"; "merit" as "the intrinsic rights and wrongs of a legal case as determined by substance rather than form"; and "voir dire" as "a preliminary examination to determine the competency of a witness or juror"). Thus, definitions found in both technical and non-technical dictionaries also show that jury selection is not a part of "trial on the merits."

In summary, "trial on the merits" is a legal term of art that has a specific meaning. *See Sanchez*, 138 S.W.3d at 329. According to case law and generally-accepted definitions of the relevant terms, "trial on the merits" begins when the jury is impaneled and sworn. In accordance with the Code Construction Act, we construe words or phrases having technical or particular meaning, such as terms of art or science, in accordance with their technical meaning. *See* TEX. GOV'T. CODE ANN. § 311.011(b). Consequently, "trial on the merits," as that phrase is used in section 54.306(b), begins when the jury is impan-

eled and sworn. *See Sanchez*, 138 S.W.3d at 329–30 (noting "the Legislature chose a term of art tied to a specific meaning" in drafting article 45.019(f)); *White*, 506 S.W.3d at 44 (prior construction of identical phrase in another statute is evidence the phrases mean the same thing) (citing *Sanchez*, 138 S.W.3d at 329–30).

We reach this conclusion notwithstanding appellant's citation of *Watson v. State*, 917 S.W.2d 65 (Tex. App.–Fort Worth 1996, pet. ref'd) (op. on remand), and *Holden v. State*, No. 2-03-454-CR, 2004 WL 2486020 (Tex. App.–Fort Worth Nov. 4, 2004, pet. ref'd) (mem. op., not designated for publication). In *Holden*, the court stated that "trial on the merits has been held consistently to include jury selection," and cited *Watson*, 917 S.W.2d at 67, which appellant cites for the notion that jury selection is an integral part of a jury trial. *Holden*, 2004 WL 2486020, at *1. *Watson*, however, did not state that jury selection is a part of *trial on the merits*, either in the opinion on remand or the opinion on rehearing. The court stated as follows: "Absent any legal authority to the contrary, we find that jury voir dire is an integral initial part of a trial, which is clearly a 'criminal proceeding.'" *Watson*, 917 S.W.2d at 67. This is undoubtedly true, as a general proposition, but it does not support the conclusion that jury selection is part of *trial on the merits*, a legal term of art "that specifies a 'distinct phase late in the criminal proceeding.'" *See Sanchez*, 138 S.W.3d at 329. We conclude *Watson*, and therefore *Holden*, do not provide an adequate foundation for this Court to conclude that jury selection is a part of "trial on the merits" as that phrase is used in section 54.306(b) of the Texas Government Code.

Section 54.306 also provides that "[a] judge *may* refer to a magistrate any matter arising out of a criminal case involving

... any other matter the judge considers necessary and proper." TEX. GOV'T CODE ANN. § 54.306(a)(8) (emphasis added). The Code Construction Act states that the use of the word " '[m]ay' creates discretionary authority or grants permission or a power." *Id.* § 311.016(1) (West 2013); *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 866 (Tex. App.–Dallas 2014, orig. proceeding) ("While the use of the words 'shall' or 'must' suggest that an action is mandatory, the ordinary meaning of 'may' is permissive."); *see also* TEX. GOV'T CODE ANN. § 311.016(5) (" 'May not' imposes a prohibition and is synonymous with 'shall not' "). The statutory limitation is that Dallas County criminal law magistrates "may not preside over a trial on the merits, whether or not the trial is before a jury." TEX. GOV'T CODE ANN. § 54.306(b). But that constraint was not violated in this case. The district judge swore in the jury, presided over trial on the merits, charged the jury, accepted their verdict, and rendered judgment based on it. Accordingly, the trial court did not err by overruling the objection to the magistrate's presiding over jury selection. We overrule appellant's second issue.

### 3. Commitment Question

In his third issue, appellant contends the magistrate erred by limiting the defense's ability to question the jury panel during voir dire.

During a hearing that took place before jury selection, the district judge ruled that appellant's 1980 conviction for sexual abuse of a child and the testimony of appellant's stepsister and her friend were admissible under article 38.37 of the code of criminal procedure. Later, during jury selection, appellant's trial counsel posed the following question to the venire: "Will you make the State prove their case, this indictment, beyond a reasonable doubt, even if you might hear about some prior felony conviction?" The State objected, arguing that under article 38.37 the jury was permitted to consider prior instances of misconduct in deciding guilt/innocence, and that the question was an improper commitment question. The magistrate sustained the objection.

The trial court has wide discretion in controlling jury selection, and its decisions are reviewed for abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Stewart v. State*, 162 S.W.3d 269, 277 (Tex. App.–San Antonio 2005, pet. ref'd). To show an abuse of discretion, an appellant must demonstrate that the question he sought to ask was proper. *Guerra v. State*, 771 S.W.2d 453, 468 (Tex. Crim. App. 1988).

A commitment question "attempt[s] to bind or commit a prospective juror to a verdict based on a hypothetical set of facts." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (quoting *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991)). Improper commitment questions are prohibited to "ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). However, not all commitment questions are improper. *Id.*; *Standefer*, 59 S.W.3d at 181. The court of criminal appeals has articulated a test for determining whether a voir dire question is an improper commitment question. *Standefer*, 59 S.W.3d at 179–83. First, the trial court must determine whether the particular question is a commitment question. *Id.* at 179. A question is a commitment question if "one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Id.* at 180. Second, if the question is a commitment question, the trial court

must then determine whether it is a proper commitment question. *Id.* at 181 ("When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard."). A commitment question is proper if one of the possible answers to the question gives rise to a valid challenge for cause. *Id.* at 182. If the question does not, it is an improper commitment question and should not be allowed by the trial court. *Id.* Third, if the question does give rise to a valid challenge for cause, then the court must determine whether the question "contain[s] only those facts necessary to test whether a prospective juror is challengeable for cause." *Id.* "Additional facts supplied beyond what is necessary to sustain a challenge for cause render improper what otherwise would have been a proper question." *Braxton v. State*, 226 S.W.3d 602, 604 (Tex. App.–Houston [1st Dist.] 2007, pet. dism'd).

■■■ Applying the above principles, we conclude the question posed by defense counsel was a commitment question because it asked prospective jurors to refrain from deciding the issue of guilt based on the fact of a prior felony conviction. *See Standefer*, 59 S.W.3d at 183 (determining that question was commitment question, despite use of word "presume," because it asked whether prospective jurors would resolve issue of guilt in DWI case if they learned a particular fact, i.e., that the defendant refused a breath test); *see also Lydia v. State*, 109 S.W.3d 495, 499 (Tex. Crim. App. 2003) (attempting to determine whether a potential juror would automatically be biased against a witness who has a criminal history is a commitment question).

The next step is to determine whether the question includes facts that could lead to a valid challenge for cause. A prior conviction for aggravated sexual assault of a child is admissible in a trial for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B) (West Supp. 2016). Article 38.37, section 2(b), allows the jury to consider the extraneous offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See id.* art. 38.37, § 2(b); *Reichle v. State*, No. 06-14-00073-CR, 2015 WL 392846, at *8 (Tex. App.–Texarkana Jan. 30, 2015, pet. ref'd) (mem. op., not designated for publication) (upholding trial court's limiting appellant from discussing specific facts of State's enhancement paragraph in his voir dire).

In this case, defense counsel sought a commitment from the jury panel that they would not be influenced by the fact of a prior felony conviction in determining whether the State had proved its case beyond a reasonable doubt, even though article 38.37 specifically allows the jury to consider such evidence under certain circumstances. The question, therefore, added more facts than were necessary to test whether a prospective juror was challengeable for cause. *Standefer*, 59 S.W.3d at 183 (proposed commitment question asking jurors if they would presume guilt based solely on refusal of a breath test would not lead to a valid challenge for cause because a person's refusal of a breath test is admissible evidence that permits jurors to presume guilt). Because defense counsel's proposed commitment question would not lead to a valid challenge for cause, the question was improper and the trial court did not abuse its discretion by prohibiting defense counsel from asking the question. We overrule appellant's third issue.

We affirm the trial court's judgment.