**AFFIRMED; Opinion Filed July 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00523-CR

### STEVEN GLENN BAUGH, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-83488-2017**

# MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Partida-Kipness

Appellant, Steven Glenn Baugh, was charged by indictment with continuous sexual abuse of a child under the age of fourteen, enhanced by a prior conviction for aggravated sexual assault of a child. Baugh waived his right to a jury and was tried by the court on a plea of not guilty. Baugh pleaded true to the enhancement paragraph. The trial court found Baugh guilty of the offense as alleged in the indictment and found the enhancement paragraph true. Baugh was sentenced to imprisonment for life without parole.[1] On appeal, Baugh challenges the sufficiency of the evidence to support the conviction. We affirm the trial court's judgment. Because the issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

---

[1] *See* TEX. PENAL CODE § 12.42(c)(4)(A).

## BACKGROUND

The indictment charged Baugh with committing two or more acts of sexual abuse against B.R. and S.K., during a period that was thirty days or more in duration, beginning on or about May 1, 2010 and ending September 1, 2012. The alleged acts of sexual abuse against both B.R. and S.K. included aggravated sexual assault by penetration of their female sexual organ and indecency with a child. At the close of trial, the State abandoned the allegation regarding indecency with a child pertaining to B.R.

At the time of trial, B.R. was fourteen years old. She met Baugh in September 2011, when she was eight years old. Baugh contacted B.R.'s mother, Kendra Lott, and arranged the meeting because he believed he was B.R.'s biological father.[2] Baugh's wife, Judith, was pregnant when B.R. met them. After their initial meeting, B.R. spent a lot of time with Baugh and Judith; they did fun things together, including hanging out at their trailer home and going to dinner. B.R. testified that she would see them "every or every other weekend."

B.R. started spending the night with Baugh and Judith at their trailer in Wylie. The first couple of times she spent the night, she slept on one of two couches in the living room. One time when she was sleeping on the couch, Baugh came over and kissed her on the mouth before he left for work. After that incident, Baugh sexually assaulted B.R. on numerous occasions. B.R. testified that late at night when she was sleeping on a couch, Baugh would come into the living room, pull down her pants, and put her penis inside of her in the area where she "pees." It hurt when Baugh did this, but B.R. tried to act like she was asleep. When Baugh stopped being inside of her, he pulled her pants back up, and put the blankets back over her. This happened more than once when

---

[2] Lott testified that she had known Baugh for most of her life and had a sexual relationship with him when she was fourteen or fifteen years old. After many years of no contact, Baugh reached out to Lott. Although Lott knew Baugh was not B.R.'s father, Lott filed a child support application with the Attorney General's Office regarding Baugh, but later abandoned her claim. Lott testified that she never told B.R. who her father was and never lead her to believe that Baugh was her father. After talking with Baugh and meeting his wife, Lott thought it would be a good idea for B.R. to have a positive male role model in her life and encouraged the relationship.

she slept on the couch, and one time after she started sleeping in one of the guest bedrooms. It also happened two times when she slept with Baugh and Judith in their bed. The first time it happened in Baugh and Judith's bed was when they lived in the trailer, and Judith was still pregnant. The second time was at the new house in Princeton, a couple of weeks after they moved in.[3] When Baugh and Judith moved to the new house, the baby was a little over one month old. In 2016, B.R. reported the sexual abuse to a school counselor, and to her mother and stepfather.

Judith, Baugh's wife, testified that B.R. did not come to stay with them every week. According to Judith, B.R. never slept in the same bed with her and Baugh. She also testified that her son was born on May 9, 2012, when they still lived in the trailer.

S.K. was nineteen years old at the time of trial. Her grandmother is Baugh's aunt and her mother is his cousin. S.K.'s grandmother lived down the street from the house S.K. lived in on Green Acres in Princeton. One day S.K. was at her grandmother's house, sitting on the couch, when Baugh came in and sat next to her. He rested his hand on her inner thigh and then moved his hand under her shorts and put his fingers in her vagina. S.K. kept asking him to stop; Baugh told her it was okay, and that he knew what he was doing. Although S.K. did not remember exactly when this happened, the evidence established that the sexual abuse happened before she was fourteen years old, "a little bit before"[4] her mother got married, and the family moved out of the home on Greenfield Acres. S.K. reported this abuse in the summer of 2017 after she attended a church camp also attended by B.R. During the camp, the two girls shared that they had been sexually abused. They discovered that it was Baugh who had abused both of them.

---

[3] B.R. testified that the first time she decided to sleep in their bed was because she thought if she slept in the bedroom with Baugh and his wife, Baugh would not assault her. The second time B.R. slept in their bed because they had just moved to the new house in Princeton and had not yet set up all of their furniture for B.R. to sleep somewhere else.

[4] When asked by the prosecutor about the timing of the abuse in relation to her family moving out of the house on Greenfield Acres, the prosecutor asked if it was "just before or did it seem like it was a little bit before?" S.K. replied, "I think it was a little before," but S.K. did not know how long before.

S.K.'s mother, Nancy Shoemaker, testified that Baugh is her cousin and that her mother is his aunt. When she was growing up, Baugh and his family would come and see her mother often. They lived at 2508 Greenfield Acres in Princeton from 2006 until Shoemaker got married on May 12, 2012. Her mother lived in the same neighborhood at 2519 Greenfield Acres. After Shoemaker moved out, her dad lived there for about a month until Baugh and his family moved into the house in June 2012. Shoemaker testified that her mother always had people at her house until her mother had her accident on December 1, 2012.

Baugh testified on his own behalf and denied that he ever sexually abused B.R. or S.K. Baugh testified that he spent a year with B.R., and that she came over almost every two weeks. When B.R. first started spending the night with him and Judith in the trailer, she slept on the couch, but they eventually created a guest room for her to stay in. Baugh denied that B.R. every slept in the bed with him and Judith. He testified he and Judith moved into the Princeton house in June 2012, when his son was a little over a month old. Baugh also testified that he grew up with S.K.'s mother and knew S.K.'s family very well.

**ANALYSIS**

In Baugh's first issue, he contends the evidence is insufficient to support the conviction because the State failed to prove that at least thirty days had elapsed between the acts of sexual abuse about which B.R. and S.K. testified. Baugh argues that B.R. was never asked if the incidents occurred over a period which was more than twenty-nine days, and it was never established where Baugh was living when the sexual assault of S.K. happened. Thus, according to Baugh, we are left with nothing but speculation to prove the acts occurred for the duration required. The State argues that a rational trier of fact could have found that thirty or more days elapsed between the Baugh's sexual abuse of B.R. on the couch in the trailer and his sexual abuse in his bed in the trailer, as well as the first instance of abuse on the couch and final instance of abuse in Baugh's

bed at the house in Princeton. The State also argues that the evidence demonstrates that Baugh sexually abused S.K. thirty or more days before he abused B.R. We agree that the evidence is sufficient to prove the acts of sexual abuse occurred over a period which was thirty or more days in duration.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899.

To establish the offense of continuous sexual abuse of a child, the State had to prove that during a period that is thirty or more days in duration, Baugh committed two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, when he was seventeen years of age or older, and the victim is a child younger than fourteen years of age. TEX. PENAL CODE § 21.02(b). An act of sexual abuse includes aggravated sexual assault of a child, and indecency with a child. *Id.* § 21.02(c)(2), (4). Although the exact dates of the abuse need not be proven, the offense does require proof that two or more acts of sexual abuse occurred during a period of thirty days or more. *Id.* § 21.02(b); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 38.07(b)(1); *Garner*, 523 S.W.3d at 271.

The combined testimonies of B.R., Baugh, and his wife, Judith, shows the following regarding the sexual abuse suffered by B.R.:

(1) There were four instances of sexual abuse when B.R. stayed overnight with Baugh and Judith in the trailer – two on the couch, one in the guest bedroom, and one in Baugh's bed.

(2) When B.R. first met Baugh in September 2011, Judith was pregnant.

(3) The last instance of sexual abuse in the trailer was the incident in Baugh's bed.

(4) Judith was still pregnant when the sexual abuse occurred in the trailer in Baugh's bed.

(5) Baugh's son was born on May 9, 2012.

(6) There was one instance of sexual abuse in Baugh's bed in the new house in Princeton when B.R. stayed there a couple of weeks after Baugh and his family moved in.

(7) Baugh moved into the house in Princeton when his son was a little over a month old.

(8) B.R. stayed with Baugh and Judith every two weeks.

(9) The sexual abuse did not happen every time B.R. stayed with Baugh and Judith.

Based on this testimony, the trial court could have reasonably inferred that the four instances of sexual abuse that took place in the trailer were separated by at least two weeks. Thus, at a minimum, the sexual abuse in the trailer took place over the course of two months. Further, taking into account the fact that the last instance of sexual abuse in the trailer occurred when Judith was still pregnant, that the baby was born on May 9, and that the sexual abuse in the house in Princeton occurred a couple of weeks after the family moved in when the baby was six or seven weeks old, the trial court could have also reasonably inferred that the sexual abuse in the house in Princeton took place well over thirty days from the first instance of abuse in the trailer, and well over thirty days from the last instance of abuse in the trailer.

In addition to the evidence showing that Baugh sexually abused B.R. for a period of time spanning several months, the combined testimonies of B.R., S.K., Baugh, Judith, and Shoemaker

show that the acts of sexual abuse against B.R. and S.K. also occurred more than thirty days apart. That testimony indicates the following:

> (1) S.K. lived in the house on Greenfield Acres in Princeton from 2006 until May 12, 2012.
>
> (2) Baugh sexually abused S.K. "a little bit before" her family moved out of the house, as opposed to "just before" her family moved.
>
> (3) Baugh's son was born on May 9, 2012.
>
> (4) Baugh moved into the house in Princeton when his son was a little over a month old.
>
> (5) Baugh sexually abused B.R. in the house in Princeton when B.R. stayed there a couple of weeks after Baugh and his family moved in.

Based on the this testimony, the fact finder could have reasonably inferred that Baugh's sexual abuse against S.K. took place no later than May 12, and most likely several days or weeks before May 12. Thus, if the last possible date Baugh could have sexually abused S.K. was May 12, and the abuse by Baugh against B.R. in the Princeton house occurred a couple of weeks after they moved into the house in Princeton, it would be reasonable to infer that the abuse against B.R. in the Princeton house occurred no earlier than June 16 or June 24, well over thirty days past May 12.

Considering the evidence, and the reasonable inferences to be drawn from that evidence, we conclude that a rational trier of fact could have found that the acts of sexual abuse occurred over a period that was thirty or more days in duration. *See Hernandez v. State*, No. 05-17-00560-CR, 2018 WL 2316026, at *4 (Tex. App.—Dallas May 22, 2018, pet. ref'd) (affirming conviction for continuous sexual abuse of a young child or young children and noting that "[w]hile the girls were unable to provide specific dates for when the abuse occurred, they referred to the sexual

abuse occurring at different houses and their mother was able to provide a timeline of when they resided at those houses."). Baugh's first issue is overruled.[5]

## CONCLUSION

We affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
180523F.U05

---

[5] Because we have concluded that the evidence is sufficient to support Baugh's conviction for continuous sexual abuse of a child, we need not address the "Ancillary Question" raised in his brief regarding the proper remedy to be applied.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN GLENN BAUGH, Appellant

No. 05-18-00523-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-83488-2017.
Opinion delivered by Justice Partida-Kipness, Justices Whitehill and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of July, 2019.