**AFFIRMED as MODIFIED and Opinion Filed September 23, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01174-CR

**JOSE ALFREDO FUNES JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1700830-T**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Molberg and Carlyle
Opinion by Chief Justice Burns[1]

Jose Alfredo Funes appeals his continuous sexual assault of a young child conviction. A jury convicted appellant and sentenced him to life imprisonment. In two issues, appellant argues the evidence is legally insufficient to support his conviction, and the trial court erred in overruling his objections to evidence of extraneous offenses or transactions. In a single cross point, the State argues the judgment should be reformed to reflect the age of the victim and include a special

---

[1] The Honorable David Bridges, Justice, participated in the submission of this appeal; however, he did not participate in the issuance of this opinion due to his death on July 25, 2020. Chief Justice Burns has reviewed the record and the briefs in this cause.

finding that the victim was younger than fourteen at the time of the offense. As reformed, we affirm the trial court's judgment.

In December 2017, appellant was charged by indictment with continuous sexual assault of a young child. The indictment alleged the following:

> That [appellant] hereinafter called Defendant, on or about the 1st day of December, 2010, in the County of Dallas, State of Texas, did then and there intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [M.F.], a child younger than 14 years of age, hereinafter called complainant, namely by: the contact of the complainant's female sexual organ by the Defendant's sexual organ AND by contact between the mouth of the complainant and the sexual organ of the Defendant AND by contact between the mouth of the defendant and the sexual organ of the complainant AND by the contact between the hand of the complainant and the genitals of the Defendant with the intent to arouse and gratify the sexual desire of the Defendant AND by the contact between the hand of the Defendant and the genitals of the complainant with the intent to arouse and gratify the sexual desire of the Defendant.

At trial in June 2018, the trial court conducted a hearing outside the presence of the jury to inquire into "some matters involving domestic violence." The prosecutor asked M.F., the complainant, whether she had any specific memories of appellant hitting her mother, S.B. M.F. testified she heard appellant hitting her mother with a belt. The prosecutor asked how M.F. knew appellant was hitting S.B. with a belt, and M.F. testified she knew because "when we get spankings, that's what it sounds like." M.F. ran downstairs to get her "Tia Nancy," and the two came back upstairs. Tia Nancy was "banging on the door and telling [appellant] to leave [M.F.'s] mom alone." M.F. testified her "Tia Nancy opened the door, and my mom was crying,

–2–

and [appellant] dropped a belt on the floor." At the time of the incident, M.F. "was like five."

M.F. testified another incident occurred at "abuelita's house," and appellant "was yelling at my mom, and we were in the car and [appellant] tried to pull my mom out the car, and he jumped on the window." When appellant pulled M.F.'s mother out of the car, M.F. grabbed her baby brother and got out of the car. M.F., her mother, and her baby brother "ran into our abuelita's house," and appellant "started screaming at [M.F.'s] mom." Appellant's sister came "out of her room" and told appellant "to leave her alone." Appellant "started screaming at her" and then "talking rude to her and talking about her," and she started to cry. M.F.'s "abuelita came and told [appellant] that he needs to grow up." M.F. testified her abuelita is appellant's mother. When appellant "would do these things," it made M.F. think that he would hurt M.F.'s mother.

When M.F. had testified, the trial court asked if the prosecutor had any argument regarding her testimony. The prosecutor argued that, based on the "nature of the abuse and when it came out," the "domestic violence within the household had significant impact" on M.F. Specifically, the prosecutor argued "under 38.37 and maybe even 404(b)(2), that this all goes to M.F.'s state of mind, the nature of her relationship with the defendant at the time, and the reason that she was afraid to tell, because she was – she thought that the defendant was going to hurt her mom or hurt someone in her family."

–3–

Defense counsel objected that the notice he received concerning extraneous offenses was "vague, general, somewhere within a four- or five-year period that there was a continuing course of conduct of assaultive or abusive conduct" by appellant toward S.B., and there at trial was the first time he was "getting specifics." Defense counsel also objected "on the basis that for an extraneous offense to be proved – to be allowed, it should be proved beyond a reasonable doubt." Defense counsel noted there were witnesses to "these acts," and police reports filed as to these acts, but without witnesses counsel did not "believe that it's been offered beyond a reasonable doubt." Finally, defense counsel objected the evidence was not relevant, and its probative value was outweighed by the prejudicial effect.

The trial court did not allow the incident involving the belt into evidence because the incident "occurred before the outcry" and "did not keep [M.F.] from making an outcry." The trial court stated the second incident was "very vague," and there was nothing to indicate that the incidents kept M.F. from making an outcry.

With the jury present, M.F. testified that, when she was "four or five," she was sleeping on a couch upstairs at her house when appellant woke her and told her to get up. At the time, M.F.'s mother was asleep. Appellant told M.F. he was going to give her a "lollipop." Appellant then "made [M.F.] suck his private part" and close her eyes. Afterwards, M.F. said she was going to tell her mother, but appellant said "he was going to hurt [M.F.'s] mom, and [M.F.] already knew that he was."

At this point, the trial court asked the jury to step out and conducted another hearing outside the presence of the jury. The prosecutor asked M.F. what appellant said to her after the abuse, and M.F. answered that "he threatened [M.F.] and said that he was going to hurt [M.F.'s] mom, like [M.F.] said in the past," when she told the prosecutor what appellant did to M.F.'s mom "with the belt" and at her abuelita's house. Through questioning by the trial court, M.F. testified she eventually told her mother about the abuse, the belt incident occurred before she told her mother, and the incident at her abuelita's house occurred after she told her mother. The trial court stated that, based on M.F.'s answers to the trial court's questioning, it appeared "the belt incident goes to [M.F.'s] state of mind of why she did not make an outcry immediately." The trial court told the prosecutor M.F. could talk about the belt incident but not the car incident because M.F. did not "know about when that car incident occurred." Defense counsel renewed his previous objections and reminded the court that, in two forensic interviews, M.F. said appellant "never told her not to tell." The trial court told defense counsel "that's something you can argue," and counsel could "ask her that on the stand," but "that goes to her state of mind."

With the jury once again present, the prosecutor asked about the "very first time" appellant abused M.F. and asked how old M.F. was at that time. M.F. testified she was "five or four" at the time, and she repeated her earlier testimony concerning the abuse. This time, however, when M.F. testified she told appellant she was going to tell her mom and appellant threatened to hurt her mom, the prosecutor asked why

M.F. believed appellant was going to hurt her mom. M.F. testified, "Because he hit my mom and hit her with a belt." Defense counsel renewed the objections he had made outside the presence of the jury, and the trial court overruled the objection. The prosecutor then elicited from M.F. her testimony concerning the belt incident.

M.F. testified that she eventually told her mother about the first incident of abuse, and her mother "called the cops." After that, "a lady" interviewed M.F., and M.F. told her about the first incident of abuse. M.F. testified she did not feel comfortable talking to the lady because she "was scared to talk to somebody." Once she got home, M.F. and her mother "talked, but just not specific details." At some point, M.F. told her mother that the abuse did not happen and she had lied about the incident because appellant had threatened M.F.

Appellant came back to live with M.F. and her mother, and appellant started "doing things to [M.F.] again." M.F. testified she lived in Garland with her two younger brothers, her mother, and appellant when "a lot of things that [appellant] did" to her happened. M.F. testified she was in third grade when she lived in Garland, and during this time she told her teacher about the abuse. The prosecutor asked "how many times did things happen" to M.F., and she answered, "a lot of times." M.F. said the last time was the day before she told her teacher about the abuse.

That last time, appellant called M.F. into her mother's bedroom, and M.F. brought her brother into the room. Appellant told her brother to leave and shut the

door, and he did. Appellant was lying naked on the bed, and he told M.F. to "come here." M.F. "went beside the bed," and appellant "pulled [M.F.'s] pants off" and touched her private part with his mouth and tongue. M.F. "did not like it, and [she] told him to leave [her] alone." M.F. testified this was not the first time appellant touched her private part with his mouth, and "there was many other times in the house" in Garland. For the first time, during this last episode of abuse, appellant put his finger in M.F.'s private part, and "it hurt [her], and [she] told him to stop and leave [her] alone." M.F. testified appellant also, for the first time, touched M.F.'s private part with his "private that he pees with." M.F. testified, "that's when I told somebody, because I did not want that to happen no more, and I was scared for me and my brothers and my mom." M.F. "was so scared before, but that scared me more." M.F. told her teacher about the abuse the next day.

M.F. testified that, during the first half of third grade, "these things" were happening more than once a month but "a little bit less" than once a week but "sometimes it would happen more than once a week." M.F. testified these things happened when her mother was not home, and appellant "would be there sometimes after – when [appellant] didn't go to work or on his lunch break, when [she] got home." M.F. testified that things were happening in between the time she was about five and eight when she was living other places. "The only time that it stopped happening" was when appellant and her mother broke up for a time and appellant went to Mexico.

M.F. testified she was interviewed a second time by "a guy," but she "didn't feel able to be talking to a guy about it." M.F. did not tell the guy everything that happened to her. The prosecutor asked M.F. if she told the jury "the best that [she could] remember everything," and M.F. testified she told the jury most of the things she remembered really clearly. M.F. agreed that the times she remembered were the "worst times" and "also happened to be the first time and the last time." However, there were "times in the middle" when appellant "was sexually assaulting [her]," and almost every time something happened, appellant told M.F. that he would hurt her mom if she told. At the conclusion of the evidence, the jury found appellant guilty of continuous sexual assault of a young child. This appeal followed.

In his first issue, appellant argues the evidence is legally insufficient to support his conviction.

A person commits the offense of continuous sexual abuse of a child under the age of fourteen if, during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse and, at the time of the commission of each act, he is seventeen years of age or older and the victim is a child younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

Although the exact dates of the abuse need not be proven, the offense requires proof that two or more acts of sexual abuse occurred during a period of thirty days or more. *See* TEX. PENAL CODE ANN. § 21.02(d); *Garner*, 523 S.W.3d at 271. The

statute does not require that the jury agree unanimously on the specific acts of sexual abuse the defendant committed or the exact dates when those acts were committed. *See* TEX. PENAL CODE ANN. § 21.02(d).

In determining the sufficiency of the evidence, the reviewing court considers the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). The jury is the sole judge of the credibility and weight to attach to witness testimony. *Jackson v. Virginia*, 443 U.S. 307, 319, (1979). The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a); *Garner*, 523 S.W.3d at 271.

Here, M.F. testified in detail concerning the first and last episodes of abuse occurring during a period of more than thirty days. Further, M.F. testified there were "times in the middle" between the first and last offenses when appellant "was sexually assaulting [her]," and almost every time something happened, appellant told M.F. that he would hurt her mom if she told. We conclude this evidence was sufficient to enable the jury to find the essential elements of the offense of continuous sexual assault of a young child beyond a reasonable doubt. *See Acosta*, 429 S.W.3d at 624–25; *Garner*, 523 S.W.3d at 271. We overrule appellant's first issue.

In his second issue, appellant argues the trial court erred in overruling his objections to the admission of evidence of an extraneous offense. Specifically, appellant complains of the admission of evidence concerning the belt incident. Appellant argues the State provided only vague and insufficient notice of its intention to introduce evidence of extraneous offenses; the belt incident was not proven beyond a reasonable doubt; and evidence of the belt incident was not relevant, and its probative value was outweighed by the danger of unfair prejudice.

We review the admissibility of an extraneous offense for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold it. *Id.* In determining whether the trial court abused its discretion, we may not substitute our opinion for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Article 38.37 of the code of criminal procedure permits the introduction of "evidence of extraneous offenses or acts" in certain types of sexual abuse cases, including cases in which the defendant is charged with continuous sexual assault of a young child as was the case here. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(a)(1)(A). Specifically, section 1(b) provides:

> (b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

*Id.* art. 38.37, § 1(b).  Section 3 of article 38.37 provides, "The state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial."

Appellant argues the State's notice only stated that "somewhere within a four or five year period that there was a continuing course of conduct of assaultive or abusive conduct" on appellant's part toward M.F.'s mother.  The notice provided identified the following extraneous acts of Appellant:

1) during a period of five years in Dallas and Denton counties, continuous physical abuse of S.B. by striking her with his hands and feet and

2) during a period of six years in Dallas and Denton counties, continuous threats to harm the family of M.F. if she told anyone about the sexual abuse.

Thus, the notice given to appellant laid out the evidence the State presented at trial and the theory it was used to support.  The State presented M.F.'s testimony that she did not outcry because appellant threatened to harm her mother and presented evidence of the belt incident to show its effect on M.F. and how it reinforced appellant's threat to hurt her mother.  Appellant argues the belt incident was also inadmissible because it was not committed "against M.F."  We conclude it is within the zone of reasonable disagreement whether, in the context of appellant's

continuous sexual assault of M.F. and his repeated threats to hurt M.F.'s mother to ensure M.F.'s silence, exhibiting assaultive behavior towards M.F.'s mother where M.F. could hear it was, in fact, an act committed "against" M.F. herself.

Appellant argues the belt incident was not proven beyond a reasonable doubt and was therefore inadmissible. Section 1 of article 38.37 does not on its face require the trial court to determine that evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt when the other crimes, wrongs, or acts are used to show state of mind or the relationship between the defendant and the child. *Id.* art. 38.37 § 1. The requirement that the trial court make such a determination is found in section 2-a and expressly applies to section 2, which provides evidence that a defendant committed a separate offense may be admitted for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant. *Id.* art. 38.37 §§2, 2-a. Further, the jury charge required the jury to find appellant guilty beyond a reasonable doubt.

Appellant also argues the evidence concerning the belt incident was irrelevant, and its probative value was outweighed by the danger of unfair prejudice, citing rule of evidence 403. Appellant argues the evidence had no probative value and was not needed by the State. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. The trial court determined the belt incident evidence, because the incident occurred before M.F. told her mother about the abuse, was relevant to show M.F. delayed her outcry because she was afraid for her mother's safety. We conclude the trial court did not abuse its discretion in admitting evidence concerning the belt incident. *See Devoe*, 354 S.W.3d at 469. We overrule appellant's second issue.

In a single cross point, the State argues the judgment should be reformed to reflect the age of the victim and include a special finding that the victim was younger than fourteen at the time of the offense. This Court has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and the nature of the case may require. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we reform the trial court's judgment to reflect that the age of the victim at the time of the offense was four years old and to include a special finding that the victim was younger than fourteen at the time of the offense.

As reformed, we affirm the trial court's judgment.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

181174F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSE ALFREDO FUNES JR.,
Appellant

No. 05-18-01174-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1700830-T.
Opinion delivered by Chief Justice
Burns. Justices Molberg and Carlyle
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:
> Following the phrase "The age of the victim at the time of the offense
> was," "N/A" is deleted, and the following is substituted: "Four years
> old. The Court enters an affirmative finding that the victim or
> intended victim was younger than 14 years of age at the time of the
> offense."

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered September 23, 2020