**Opinion issued August 19, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-19-00654-CR**

———————————

**ISMAEL CAVAZOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1639262**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Ismael Cavazos, of the first-degree felony offense

of continuous sexual abuse of a child.[1] The trial court assessed Cavazos's

---

[1]    *See* TEX. PENAL CODE ANN. § 21.02(b).

punishment at confinement for fifty years. In one issue on appeal, Cavazos contends that the State failed to present sufficient evidence that he committed two or more acts of sexual abuse against the complainant during a period that is thirty or more days in duration.

We affirm.

## Background

C.L. ("Cindy")[2] met Cavazos online in 2014, and they began dating. At the time, Cindy had one daughter from a previous relationship, M.M. ("Morgan"), the complainant. Morgan was born in April 2009 and was five years old when Cindy and Cavazos began dating. Cavazos also had children from a previous relationship.

Cindy, Morgan, Cavazos, and his children moved into an apartment together in League City in March 2015. Around August or September 2015, Cindy, Morgan, and Cavazos moved to an apartment in Webster, where they lived until May 2016. While they were living in Webster, Cindy and Cavazos had a son together. In May 2016, Cindy, Cavazos, their son, and Morgan moved to an apartment in Alvin.

While living in League City, Cindy had a full-time job and worked during the day. Cavazos was not working, and he assumed primary childcare responsibilities for his children and for Morgan after school and before Cindy arrived home. During

---

[2] In this opinion, we refer to the child complainant and her mother by pseudonyms to protect their privacy.

her pregnancy, while she was living in Webster, Cindy split her time between working at home and in the office. Cavazos had a job by this point, but there were still times when Cindy would be at work and Cavazos would watch Morgan after school. While living in Alvin, Cindy worked from home and then quit to attend nursing school, which had classes three days per week. Cavazos was again responsible for picking Morgan up from school.

On December 4, 2016, Cindy, Cavazos, their son, and Morgan were still living in Alvin. Morgan was seven years old. That day, Morgan woke Cindy up and let her know that she was "hurting really bad" and could not use the restroom. Cindy initially believed that Morgan might have a urinary tract infection and had her drink several bottles of water. When that did not solve the problem, Cindy asked Morgan if anyone had "messed with her." Morgan said no. Cindy then examined Morgan and discovered vaginal discharge. When Cindy told Cavazos about Morgan's pain, he was unconcerned and said, "Why are you telling me? Take her to the hospital."

Cindy took Morgan to the hospital. While at the hospital, Morgan had vaginal bleeding. She did not, at this point, make an outcry to the doctor or to Cindy. The doctor prescribed antibiotics, and Cindy drove Morgan to a pharmacy. While they were in the pharmacy parking lot, Cindy again asked Morgan if anyone had touched her. This time, Morgan said that Cavazos had touched her. Morgan told Cindy that appellant "put his fingers down there" and pointed to her vagina.

Cindy and Morgan returned to their apartment, and Cindy told Morgan to stay in the car. Cindy then retrieved her son and confronted Cavazos. Cavazos denied touching Morgan inappropriately.[3] Cindy left the apartment with Morgan and her son, and she made a report to the Alvin Police Department that same night. Morgan continued bleeding, and the next day, Cindy took Morgan to her pediatrician for a physical exam.[4] Morgan later had another physical exam at the Brazoria County Children's Assessment Center, and she also had a forensic interview.

Morgan was ten years old at trial. Morgan testified that the Webster apartment was the first place where she could remember living with Cavazos. She stated that Cavazos did something that made her feel uncomfortable "[m]ore than one time" and that this happened in both the Webster apartment and the Alvin apartment. Morgan testified that Cavazos touched and penetrated her vagina with both his hands and his penis, penetrated her anus with his penis, and made her touch his penis with her hands and her mouth. She stated that these actions happened "[l]ots of times"

---

[3]     Later, while Cavazos was in custody, he sent Cindy a letter in which he stated that he was not blaming Cindy for anything "because [he] let it all [happen]" and "let it all be taken away." He also stated, "I'm not going to forgive your daughter for doing the right thing. I'm proud of her. I'm sorry for what I put you through. I will be spending a lot of time in prison, but it's not going to go to [waste]. I will seek a new type of help and I will beat this evil."

[4]     Dr. Leila Sim, a pediatrician, examined Morgan the day after her outcry. Morgan disclosed digital penetration and attempted vaginal intercourse. Dr. Sim testified that, based on the physical examination, it appeared that Morgan "may have been physically abused in the genitalia."

4

and occurred at both the Webster and Alvin apartments while Cindy was at work. She stated that Cavazos would touch her inappropriately when it was just her and him at the apartment, and this occurred after she came home from school for the day.

Morgan testified that the acts of abuse happened on "[m]ore than one day" and "[l]ots of times." Morgan had the following exchange with the prosecutor:

> State: And did it happen, like, every day, every week, every other day? How often would you describe how often it happened?
>
> Morgan: Every day, week.
>
> State: Every day in a week? Tell me what you mean by that. How often was it happening?
>
> Morgan: Like, it would happen every day and some weeks. Like, weeks, too. As the week go by, it would happen.
>
> State: . . . And so what you're saying is—correct me if I'm wrong, [Morgan]. It would happen every couple days and it kept happening is what you're saying?
>
> Morgan: Yes.
>
> State: Okay. So, whenever you move into the Webster house to when you move out of the Webster house, is this happening over and over the whole time you live there?
>
> Morgan: Yes.
>
> State: Okay. All right. So is that what you mean by happening, like, week after week after week?
>
> Morgan: Yes.

Morgan then testified, again, that Cavazos kept sexually abusing her after they moved from Webster to Alvin. On cross-examination, Morgan stated that the abuse occurred when she was in "first and second grade."

5

Morgan's physical examination at the Brazoria County Children's Assessment Center occurred in late December 2016. During this exam, Morgan disclosed different acts of sexual abuse from what she had disclosed to Cindy earlier that month. Morgan identified Cavazos as the perpetrator. She told the nurse conducting the exam that Cindy met Cavazos "when I lived in League City or Webster." Morgan stated that she was "not sure" how many times the abuse happened, but when she was asked when the first instance of abuse was, she stated, "When my mom met Ismael." When asked when the last instance of abuse occurred, Morgan stated, "I don't know." Morgan did not provide specific dates.

Cavazos testified on his own behalf. He stated that he and Cindy lived in League City from March 2015 until August or September 2015, when they moved to Webster. They lived in Webster for around six months before moving to Alvin to be closer to his job. His hours varied, but "[m]ost of the time" he worked twelve-hour days, seven days per week. He testified that he was never alone with Morgan; instead, his children would be in the household as well. Cavazos also testified that the Webster apartment had one bedroom and the children—Morgan and his children—slept in the living room. He agreed with his counsel that "it would have been kind of difficult" for someone to do something in that apartment without other people knowing about it. He testified that he was surprised when Cindy accused him

of sexually abusing Morgan because he had a "good relationship" with Morgan. Cavazos denied ever sexually abusing Morgan.

The jury found Cavazos guilty of the offense of continuous sexual abuse of a child. The trial court assessed his punishment at confinement for fifty years. This appeal followed.

## Sufficiency of the Evidence

In his sole issue, Cavazos contends that the State failed to present sufficient evidence that he committed two or more acts of sexual abuse against Morgan during a period that is thirty or more days in duration. Cavazos acknowledges that the State established that multiple acts of sexual abuse occurred, but he argues that the State did not prove that these acts occurred over the requisite time period of thirty days or more.

### A.  *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *see Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011)

7

(stating that role of factfinder is "as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence"). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Rivera v. State*, 507 S.W.3d 844, 853 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017) (stating that factfinder has duty to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Bohannan*, 546 S.W.3d at 178; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also Nisbett*, 552 S.W.3d at 262 ("A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally."). We resolve any inconsistences in the evidence in favor of the verdict. *Bohannan*, 546 S.W.3d at 178; *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination.").

A criminal conviction may be based on circumstantial evidence. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone

can be sufficient to establish guilt. *Nisbett*, 552 S.W.3d at 262. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must consider the evidence cumulatively and may not "use a 'divide and conquer' strategy for evaluating the sufficiency of the evidence." *Nisbett*, 552 S.W.3d at 262.

**B.**   ***Continuous Sexual Abuse of a Child***

To establish that Cavazos committed the offense of continuous sexual abuse of a child, the State was required to prove that during a period that is thirty days or more in duration, Cavazos, who was 17 years of age or older, committed two or more acts of sexual abuse against Morgan, a child younger than 14 years of age. *See* TEX. PENAL CODE ANN. § 21.02(b), (c) (defining "act of sexual abuse" to include act that constitutes aggravated sexual assault); *id.* § 22.021(a)(1)(B) (setting out elements of aggravated sexual assault of child). On appeal, Cavazos does not dispute that he committed two or more acts of sexual abuse against Morgan. Instead, he argues that the State failed to establish that he committed the acts over a period of time that is thirty or more days in duration.

The Texas Legislature created the offense of continuous sexual abuse of a child "in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are

9

ongoing acts of sexual abuse." *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (quoting *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.)). The primary purpose for specifying a date in an indictment is to show that the prosecution is not barred by the statute of limitations, but neither continuous sexual abuse of a child nor aggravated sexual assault of a child has a period of limitations. *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.). However, although the State is not required to prove the exact dates on which the specific acts of sexual abuse occurred in a continuous sexual abuse case, "the offense does require proof that two or more acts of sexual abuse occurred during a period of thirty days or more." *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); *see* TEX. PENAL CODE ANN. § 21.02(d) (providing that jury is not required to agree unanimously on which specific acts of sexual abuse were committed or exact date on which those acts were committed, but jury must agree unanimously that defendant, during period that is 30 or more days in duration, committed two or more acts of sexual abuse); *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *Garner*, 523 S.W.3d at 271; TEX. CODE CRIM. PROC. ANN. art. 38.07. The Court of Criminal Appeals has cautioned that "[e]specially where young children are involved," courts should not "impose

10

unrealistic expectations regarding proof of when an offense actually occurred." *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006); *Sledge v. State*, 953 S.W.2d 253, 256 n.8 (Tex. Crim. App. 1997) ("[I]t is not often that a child knows, even within a few days, the date that she was sexually assaulted. And, the younger the child, the greater the possibility that her abuser could never be convicted.").

Here, Cavazos argues that the State presented evidence that an incident occurred in December 2016, which led to Cindy seeking medical attention for Morgan and Morgan's outcry, but the evidence concerning when any other incidents occurred is entirely speculative. Cavazos acknowledges that Morgan testified the abuse occurred "lots of times" and occurred in both the Webster and Alvin apartments, but Morgan did not testify that she knew when her family moved from Webster to Alvin or that more than thirty days passed in between acts of abuse at the Webster apartment and acts of abuse at the Alvin apartment.

Morgan, who was ten years old at the time of trial, was not able to provide specific dates for when any acts of sexual abuse occurred. Cindy testified that Cavazos lived with her and Morgan in League City until they moved to Webster in August or September 2015. They lived in Webster until May 2016, when they moved to Alvin. They were living in Alvin at the time Morgan made her outcry in December 2016.

Morgan testified concerning the acts of abuse that Cavazos committed. She stated that the first time she could remember an act happening, she was living in Webster, and Cavazos would abuse her after she came home from school and before Cindy came home from work. She testified that the abuse occurred on "[m]ore than one day" and "[l]ots of times." She also testified that the various acts of abuse occurred while she lived in Webster and in Alvin. Morgan also had the following exchange with the prosecutor:

> State: And did it happen, like, every day, every week, every other day? How often would you describe how often it happened?
>
> Morgan: Every day, week.
>
> State: Every day in a week? Tell me what you mean by that. How often was it happening?
>
> Morgan: Like, it would happen every day and some weeks. Like, weeks, too. As the week go by, it would happen.
>
> State: . . . And so what you're saying is—correct me if I'm wrong, [Morgan]. It would happen every couple days and it kept happening is what you're saying?
>
> Morgan: Yes.
>
> State: Okay. So, whenever you move into the Webster house to when you move out of the Webster house, is this happening over and over the whole time you live there?
>
> Morgan: Yes.
>
> State: Okay. All right. So is that what you mean by happening, like, week after week after week?
>
> Morgan: Yes.

Morgan stated that the abuse occurred when she was in "first and second grade."

12

In addition to her testimony that the abuse happened "lots of times," Morgan agreed with the prosecutor that the abuse occurred "over and over the whole time" she lived in the Webster apartment, and she testified that the abuse continued when her family moved to the Alvin apartment. Cindy's testimony established that the family lived in the Webster apartment for approximately nine months before they moved to Alvin. Morgan's testimony, combined with Cindy's testimony describing when the family lived in the Webster and Alvin apartments, is sufficient to show that the acts of sexual abuse against Morgan occurred during a period that was thirty days or more in duration. *See* TEX. PENAL CODE ANN. § 21.02(b), (d); *Garner*, 523 S.W.3d at 271 (stating that State is not required to prove specific dates on which acts of abuse occurred in continuous sexual abuse case, but it must prove "that two or more acts of sexual abuse occurred during a period of thirty days or more"); *see also Hernandez v. State*, No. 05-17-00560-CR, 2018 WL 2316026, at *4 (Tex. App.—Dallas May 22, 2018, pet. ref'd) (mem. op., not designated for publication) ("While the girls were unable to provide specific dates for when the abuse occurred, they referred to the sexual abuse occurring at different houses and their mother was able to provide a timeline of when they resided at those houses."); *Aguilar v. State*, No. 04-14-00532-CR, 2015 WL 4638096, at *3 (Tex. App.—San Antonio July 15, 2015, pet. ref'd) (mem. op., not designated for publication) ("Precise dates of events are not required to establish a conviction for continuous sexual abuse, and [the child

complainant's] description of the ongoing sexual assaults is exactly what the Legislature intended when enacting the statute governing the offense of continuous sexual abuse.").

We conclude that, when viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found beyond a reasonable doubt that Cavazos committed two or more acts of sexual abuse against Morgan during a period that is thirty or more days in duration. *See* TEX. PENAL CODE ANN. § 21.02(b); *Nisbett*, 552 S.W.3d at 262; *Garner*, 523 S.W.3d at 271. We hold that the State presented sufficient evidence to support Cavazos's conviction.

We overrule Cavazos's sole issue.

## Conclusion

We affirm the judgment of the trial court.

April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).

14