**AFFIRMED and Opinion Filed August 1, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

_____

## No. 05-23-00047-CR
_____

**JORDAN JOSHUA FEIN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-83406-2021**

# MEMORANDUM OPINION

Before Justices Smith, Miskel, and Breedlove
Opinion by Justice Smith

Appellant Jordan Joshua Fein was convicted by a jury for the first-degree felony offense of continuous sexual abuse of a young child, M.G. *See* TEX. PENAL CODE ANN. § 21.02. The jury assessed appellant's punishment at twenty-six years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In one issue, appellant challenges the legal sufficiency of the evidence to support his conviction. For the reasons discussed below, we affirm.

**Evidence Presented at Trial**

Appellant was M.G.'s stepbrother. Appellant's father and M.G.'s mother met in 2012 and married in February 2014. Appellant lived in New York with his mother until 2014. After he graduated high school, he moved to Texas to live with his father, M.G.'s mother, and M.G. He was eighteen years old at the time, and M.G. was nine.

M.G. was excited when appellant moved in. She did not have any other siblings that lived with her, so when he moved in, she had someone with whom she could play video games, watch television, jump on the trampoline, and just hang out. They were home alone together a lot in the summers, but not as often during the school year. They had a normal stepsibling relationship at first, but then the relationship changed. When she was around eight or nine, she asked appellant what a "boner" was. She was in the living room sitting in one of the recliners at the time, and appellant had just got out of the shower. He went into his bedroom and came back out with a blanket wrapped around him; he was nude underneath. He lifted up the blanket and showed her his erect penis. Appellant asked her if she wanted to touch it, but she said, "No." He grabbed her wrist and made her touch it anyways. He made her "stroke him" by moving her hand back and forward. M.G. testified that it was very gross, and she felt weird and uncomfortable when it was happening. She explained that his penis was warm, and she could feel his heartbeat. She jerked her hand away, he laughed, and then they each went to their own bedrooms.

After that incident, appellant became more inappropriate with M.G.  When she walked by him, he would slap her on her butt.  He would also grab her chest if she did something he did not like or killed his character when they were playing video games.  Sometimes, if he was very angry, he would squeeze her chest hard, and it would leave bruises.  He also asked her multiple times if he could see her chest.  She showed him once and thereafter refused.

One time when they were roughhousing, he chased her around the house, caught her, threw her to the ground, got on top of her, held her hands above her head with one hand, and lifted up her shirt and squeezed her "boob" very hard under her bra.  She was scared and in pain; the incident left bruises.  On another occasion, appellant told her they could "do it."  She tried to pretend that she knew what "it" was and told him, "Yeah, we can do that."  They were lying in his bed; she was lying on her stomach playing a video game, and he got on top of her, attempted to put his penis through the leg hole in her shorts, but could not, so he stopped.  His penis touched the back of her thigh, about an inch or two down from her butt.  Another time when she was lying on her stomach in his bed, he pulled her shorts and underwear down and tried to penetrate her butt with his penis.  She grabbed his arm and dug her nails into it, trying to make him stop because of the pain.  He eventually stopped and told her to go to her room.  This time his penis touched her anus.

Appellant also tried to put his penis in M.G.'s mouth.  They were watching a movie, again lying in appellant's bed, and appellant asked her to lie her head on his

chest.  After she did, he pulled his penis out of his shorts, put his hand on the back of her head, and pushed her head down toward his penis.  Appellant asked her if she wanted to put his penis in her mouth, and she responded, "You're going to have to put it past my teeth first."  He pushed her head down two or three times and was able to penetrate her lips but could not get it past her clenched teeth.  She threatened to bite him, and he stopped.  M.G. testified that pre-ejaculate came out of his penis and into her mouth during the incident.  It was very gross, tasted salty, and was kind of slimy.  M.G. left his room, went to the bathroom, brushed her teeth and her lips, and went to her room.

M.G. testified that the last incident of abuse occurred when she was thirteen or fourteen.  They were at appellant's grandmother's swimming in the pool, and appellant was roughhousing with her by picking her up and throwing her.  She was trying to stay away from him because she was not comfortable around him, but he kept holding on to her and pushing or throwing her under water.  When she tried to get out of the pool, he pinned her to the side and started pressing his pelvis against her backside.  He pressed up against her repeatedly, moving forward and backward, and she could feel his penis on her "butt crack."

The abuse stopped when appellant moved out of their house in November 2018.  She knew what happened was wrong and told some of her friends about it but did not tell any adults because appellant told her they would not believe her and would not like her.  However, around Mother's Day in 2021, M.G. outcried to her

parents. She had been struggling in school and was having an issue with her friend group. Her mental health took a steep decline, and she messaged her sister saying she wanted to take some pills and not wake up. Her sister notified her parents. When her parents talked to her about her desire to commit suicide, they told her she could tell them anything. She felt she needed to tell them what happened with appellant. She was emotional and could not verbally describe what happened, so she wrote a letter. Her mother reported the abuse to the police the next day, and M.G. was forensically interviewed.[1]

The police contacted appellant, and he agreed to talk. Appellant initially denied the accusations, stating that he and M.G. had only spoken about certain things. However, as the interview progressed, appellant explained that he might have accidentally shown her, or she might have accidentally seen, his penis. He later admitted that he did show her his penis and told her to grab it to see how it felt. He also admitted to removing her pants and underwear on one occasion and rubbing his penis against her anus. As to oral sex, appellant admitted that his penis went past her lips but that she closed her teeth, so he stopped. He also admitted grabbing and squeezing her breasts.

Defense counsel emphasized appellant's mental capacity throughout trial and pointed out his confusion or slowness at times to answer questions during his

---

[1] M.G. was sixteen at the time of the forensic interview and eighteen at the time of trial.

interrogation, his misspelling of certain words on diagrams he drew, his misstatement of M.G.'s name at the beginning of the interrogation, his inability to sign his name because he could not write in cursive, his forgetfulness of certain words or what month it was, and how he went off in tangents during the interrogation, telling the officers about many unrelated topics. There was no dispute that appellant had a birth defect in which the white matter connecting the right and left hemispheres of his brain failed to develop. He was also in a car accident in 2017 and suffered a severe concussion, gash to the back of his head, and had to be resuscitated. Appellant told the officers that he had short term memory loss and that he needed help because of his brain condition but no one had been able to help him. The testifying investigator acknowledged that appellant agreed and responded to suggestions made by the officers during the interview.[2]

## Sufficiency of the Evidence

In reviewing the legal sufficiency of the evidence, we consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury

---

[2] Defense counsel moved to suppress appellant's confession on the grounds that he did not freely and voluntary give the confession due to his neurological deficits resulting from the birth defect in his brain. However, on appeal, appellate counsel does not challenge the trial court's denial of appellant's motion to suppress or the admission of appellant's confession at trial.

charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). We review the evidence in the light most favorable to the verdict and defer to the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *see also Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Isassi*, 330 S.W.3d at 638. The jury is the sole judge of the credibility of the witnesses and the weight of their testimony, *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010), and may choose to believe or disbelieve any part of any witness's testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).

When conducting a legal sufficiency review, we consider all evidence in the record regardless of whether it was properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). A criminal conviction may be supported by both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits the offense of continuous sexual abuse of a child if the person commits two or more acts of sexual abuse, during a period that is thirty or more days in duration, against a child victim that is younger than fourteen years of age. TEX. PENAL CODE § 21.02(b). The indictment in this case included the

–7–

following acts of sexual abuse as authorized by section 21.02(c)(2) and (c)(4) of the penal code: aggravated sexual assault of a child under fourteen years of age by intentionally and knowingly (1) causing the anus of M.G. to contact the male sexual organ of the defendant, or (2) causing the mouth of M.G. to contact the male sexual organ of the defendant; and indecency with a child by contact by intentionally and knowingly, with the intent to arouse or gratify the sexual desire of any person, engaging in sexual contact by (1) causing the hand of M.G. to touch part of the genitals of the defendant, or (2) causing the buttocks of M.G. to touch part of the genitals of defendant, including through clothing. *Id.* § 21.02(c)(2), (4); *see also id.* § 21.11(a)(1), (c) (indecency with a child); § 22.021(a)(1)(B)(iv), (v), (a)(2)(B) (aggravated sexual assault of a child). It is well established that a child victim's testimony alone is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07; *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

In his sole issue on appeal, appellant challenges the sufficiency of the evidence to support his conviction. He argues that there was no medical or scientific evidence, no forensic interview records, no results from an examination by a sexual assault nurse, and no body camera or surveillance footage presented to the jury. Instead, the entire case rested on M.G.'s testimony and appellant's statement to police. As to M.G.'s testimony, appellant appears to challenge its specificity. He asserts that M.G. described several sexual incidents but spread them out over five to

–8–

six years—from when she was eight until she was thirteen or fourteen—and did not describe instances that occurred within thirty days or more in duration. Specifically, appellant contends, "There was never any mention of any events happening daily back-to-back or within a 30-day period."[3] Appellant further argues, "There is no way to know which of the alleged incidents the jury used to substantiate proof beyond a reasonable doubt to satisfy the elements for the continuous charge."

The State responds that the evidence is sufficient because, at the very least, M.G. testified to an act of sexual abuse occurring when she was eight or nine years old and another act occurring when she was thirteen, which satisfies the thirty-day duration element of continuous sexual abuse of a young child. We agree.

We first note that, for the offense of continuous sexual abuse of a young child, the jury is "not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE § 21.02(d). The jury must, however, unanimously agree that the defendant committed two or more acts of sexual abuse during the required timeframe—a period that is thirty or more days in duration—and before the victim's fourteenth birthday. *Id.*

---

[3] To the extent that appellant's argument is that the abuse had to occur more frequently, i.e. multiple times within a thirty-day window, appellant is mistaken as to the law. The offense requires the abuse to have occurred across a period of time that is thirty or more days in duration, not within thirty days. *See* TEX. PENAL CODE § 21.02(b)(1). Thus, there must be at least thirty days separating the first act of abuse and the last act of abuse.

Although M.G. could not remember how old she was when each incident occurred, she testified that it began when she was eight or nine years old when she asked what a "boner" was and he showed her and made her touch his erect penis. She also testified that the last time it happened she was thirteen or fourteen. M.G. explained that this last incident happened during the summer when appellant rubbed his penis on her "butt crack" in the swimming pool. She further testified that appellant moved out in November that year and that she would have turned fourteen that month. Thus, the evidence shows that, when the incident in the pool occurred earlier that summer, M.G. was thirteen years old. Furthermore, M.G. was clear that the abuse happened over multiple years, pretty much the entire time appellant lived with them. This evidence supports a finding that appellant committed two or more acts of sexual abuse over a period of thirty of more days in duration when M.G. was younger than fourteen years old.

In addition, a forensic interviewer testified and explained to the jury that time is a very abstract and difficult concept for children to understand. She further explained that children often do not know the date and time events are occurring so that information does not get encoded with the memory of the event. Instead, children associate memories of events with big events, like Christmas or their birthday, or with where they lived at the time. Children also have a difficult time separating and ordering events when they are chronic. Thus, it was not abnormal

for M.G. to be unable to detail the acts of abuse in order of when they occurred or describe when precisely they happened.

Based on the evidence presented, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant committed two or more acts of sexual abuse, during a period of thirty of more days in duration, against M.G. when she was younger than fourteen. Therefore, we overrule appellant's sole issue on appeal.

## Conclusion

We affirm the judgment of conviction.

/Craig Smith/

CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230047F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JORDAN JOSHUA FEIN, Appellant

No. 05-23-00047-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-83406-2021.
Opinion delivered by Justice Smith. Justices Miskel and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 1st day of August 2024.