**AFFIRMED and Opinion Filed December 2, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00061-CR**

**ANTHONY CRAIG HENDERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-81927-2020**

## MEMORANDUM OPINION

Before Justices Molberg, Breedlove, and Kennedy
Opinion by Justice Molberg

A jury convicted appellant Anthony Craig Henderson of continuous sexual abuse of a child younger than fourteen and assessed punishment at thirty years' confinement. On appeal, he argues the evidence is insufficient to support his conviction because the State failed to bring sufficient evidence to prove, beyond a reasonable doubt, that at least two specific acts of sexual abuse were separated by at least thirty days. We affirm.

## I. BACKGROUND

Henderson was initially charged in a nine-count indictment, but at trial, the State proceeded only on count one, which charged Henderson with the offense of continuous sexual abuse of a child under fourteen[1] and alleged that, against the peace and dignity of the State:

> Henderson . . . on or about the 2nd day of January, 2008, through the 2nd day of January, 2016, in [Collin County, Texas], did then and there . . . during a period that was 30 or more days in duration, commit two or more acts of sexual abuse against [A.B.[2]], including:
>
> Aggravated Sexual Assault of a Child: intentionally and knowingly caused the female sexual organ of [A.B.], a child then younger than 14 years of age, to contact the male sexual organ of the defendant.
>
> AND/OR
>
> Aggravated Sexual Assault of a Child: intentionally and knowingly caused the mouth of [A.B.], a child then younger than 14 years of age, to contact the male sexual organ of the defendant.
>
> AND/OR
>
> Aggravated Sexual Assault of a Child: intentionally and knowingly caused the penetration of the female sexual organ of [A.B.], a child then younger than 14 years of age, by means of the defendant's finger.

Count one also alleged that "at the time of the commission of each of the acts of sexual abuse, [Henderson] was 17 years of age or older, and [A.B.] was a child younger than 14 years of age."

Henderson pleaded not guilty, and the case was tried to a jury.

---

[1] *See* TEXAS PENAL CODE § 21.02.

[2] The indictment named the individual; we use her initials, A.B.

A.B. was the State's first witness in the guilt-innocence phase. She was twenty years old at the time of trial and testified that Henderson, her father, abused her starting when she was age four and ending a couple of weeks before she went to a Job Corps program in Utah at the age of seventeen. She testified the abuse happened in Garland, Richardson, and Plano, Texas, locations where she lived between kindergarten and eleventh grade.[3]

A.B. testified that in the first incident she remembers, she was four years old, and Henderson took off her pants and put his mouth on her vagina, an act she described as Henderson putting his tongue between the two folds of her vagina and which she testified happened "very often" after that first incident. When asked how many times she would say Henderson put his mouth on her vagina, A.B. testified, "I can't count, sir." When asked if it was fair to say that because it happened so often that each individual time blends together in her mind, she said, "Yes."

A.B. testified the "most common thing" Henderson would do was to have her put her mouth on his "private."[4] This started in Garland when she was very, very young and happened in Richardson and in Plano as well. When asked about the frequency of such incidents, A.B. testified that "it seemed like every day" and "it always seemed like it was constant." She described how those events happened,

---

[3] A.B. testified she lived in Garland when she was in kindergarten and first grade, in Richardson from second grade to fifth grade, and in Plano from sixth grade to eleventh grade.

[4] A.B. identified Henderson's "private" as the body part he would use to pee.

starting with him pulling his penis out of his pants, grabbing her hands and putting them on his penis, pushing her head to his penis, her putting his mouth around his penis, and with Henderson putting a hand on her head and moving her head back and forth on his penis, activity that would stop when he ejaculated in her mouth, and she would then spit it out.

A.B. testified the "second most" common thing Henderson did was to use his hands to touch her vagina, starting in Garland and happening in Richardson and Plano as well. The first time she could remember Henderson touching her vagina with his hands was around the time she was four years old. She described this as "going on basically the whole time" and as being "skin to skin" and "on the inside" of her vagina, and Henderson would move his fingers "in and out." She described an incident when this happened and his fingernails cut the inside of her vagina and caused her to bleed. She also described an incident in the bathroom in the Richardson house, sometime between the time she was in second to fifth grade. In that incident, A.B. was taking a bath, and Henderson walked in, said he was going to help her clean up, and after he helped her clean, he put his fingers in her vagina and then left the bathroom.

Finally, A.B. also testified Henderson would touch her vagina with his "private." She described the contact as "skin-to-skin" and "between the two folds" of her vagina. A.B. also testified that, "starting pretty early," Henderson began putting his penis inside her vagina. She stated the first time she could remember him

–4–

actually having sex with her was when she lived in Garland, an incident which involved him "putting his fingers in" her vagina first and then putting his penis in her vagina and which A.B. stated happened "many times" after that. A.B. estimated that Henderson had sexual intercourse with her "probably about three times a month" and testified that this occurred not only in Garland but also in Richardson and Plano and in a storage room close to Plano.

Another incident that A.B. testified stuck out in in her mind occurred in Richardson and happened in the middle of the night while her stepmother was sleeping in another room. In that incident, which happened around the time A.B. was in fifth or sixth grade, Henderson carried her from her room to the living room, laid her down on her back on an ottoman, took off her pants down to her ankles, and then put his penis inside her vagina. She pretended to be asleep and did not say or do anything because she knew her stepmother was in another room asleep, and A.B. thought her stepmother would not believe her.

A.B. testified all of the abuse finally stopped when she spoke out about it after she moved to Utah, a move she made in 2019.[5] The last time abuse happened was a couple of weeks before she moved to Utah, and in that incident, Henderson put his mouth on her vagina in Henderson's room in Plano.

---

[5] A.B. testified that even though the sexual abuse stopped after A.B. moved, Henderson texted A.B. after she moved to the Job Corps program to ask her to send him a naked picture of herself.

Henderson elected to testify in the guilt-innocence phase and denied abusing A.B. He testified he never sexually abused A.B. and that A.B. was lying. He denied ever putting his fingers inside A.B.'s vagina, putting his fingers anywhere near A.B.'s genitals, putting his mouth on A.B.'s vagina, using his tongue anywhere near A.B.'s genitals, having penetrative sex with A.B., or having her put his penis in her mouth. According to Henderson, A.B. was lying as part of a plot with her mother and in order to exact revenge.

In addition to A.B. and Henderson, five other witnesses testified in the guilt-innocence phase: three members of A.B. and Henderson's family; Kristen Nichols, a Detective with the Plano Police Department who participated in the investigation of the alleged offense; and Lisa Martinez, a Director of Case Management and Forensic Services at the Collin County Children's Advocacy Center.

The three family members of A.B. and Henderson who testified in the guilt-innocence phase were half-siblings to A.B. and were adult children of Henderson: Karein Henderson (his daughter); Antwuan Henderson (his son); and Kawuana Henderson (his daughter). Each testified on Henderson's behalf. Among other things, all three testified that they did not believe A.B.'s allegations and that A.B. has a reputation for untruthfulness in the community. Antwuan also testified that, after Henderson was arrested, he talked with Henderson on the phone while Henderson was in jail and remembers Henderson telling Antwuan "none of this is true" and remembers Henderson telling Antwuan to say "it was a bunch of lies."

At the conclusion of the guilt-innocence phase of trial, the jury found Henderson guilty of the offense as charged in the indictment. Following a punishment hearing, the jury assessed punishment at thirty years in prison. The trial court certified Henderson's right to appeal, and Henderson filed a motion for new trial that was overruled by operation of law.  This timely appeal followed.

## II. ANALYSIS

In his sole issue, Henderson argues the evidence is insufficient to support his conviction because the State failed to bring sufficient evidence to prove, beyond a reasonable doubt, that at least two specific acts of sexual abuse were separated by at least thirty days.

In determining whether the evidence is legally sufficient to support a conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see also Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018).  We presume the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of evidentiary weight and witness credibility.  *See Braughton*, 569 S.W.3d at 608; *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).  The complainant's testimony, standing alone, is sufficient to support a conviction

for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 38.07(a), (b); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); *Bishop v. State*, No. 05-18-01496-CR, 2020 WL 3821076, at *7 (Tex. App.—Dallas July 8, 2020, no pet.) (mem. op., not designated for publication) (citing *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd)).

We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13.

A person commits the offense of continuous sexual abuse of a child if the person commits two or more acts of sexual abuse against a child under fourteen during a period that is thirty or more days in duration, when the person is at least seventeen years of age at the time each act of abuse is committed. *See* TEX. PENAL CODE § 21.02(b); *Alexander v. State*, Nos.05-18-00784-CR, 05-28-00785-CR, 2019 WL 3334625, at *3 (Tex. App.—Dallas Jul. 25, 2019, no pet.) (mem. op., not designated for publication). Although the exact dates of the abuse need not be proven, the offense does require proof that two or more acts of sexual abuse occurred during a period of thirty days or more. TEX. PENAL CODE § 21.02(b); *Garner*, 523 S.W.3d at 271; *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (op. on rehr'g) ("The State need not prove the exact dates of

–8–

the abuse, only that 'there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration.'") (quoting *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.)). But the jury is not required to agree unanimously on which specific acts of sexual abuse were committed or the exact date when those acts were committed. TEX. PENAL CODE § 21.02(d); *Render v. State*, 316 S.W.3d 846, 856 (Tex. App.—Dallas 2010, pet. ref'd).

For purposes of Texas Penal Code § 21.02, an "act of sexual abuse" means any act that is a violation of one or more of several penal laws, including aggravated sexual assault under Texas Penal Code § 22.021. *See* TEX. PENAL CODE § 21.02(c)(4).

"The Texas Legislature created the offense of continuous sexual abuse of a child in response to an expressed need to address sexual assaults against young children who are typically unable to give precise dates when there are ongoing acts of sexual abuse." *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2016, pet. ref'd) (quoting *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.)); *see also Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) ("Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses on a continuing course of conduct . . . ."). To this end, courts give wide latitude to the testimony of child sexual abuse victims, *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990), and a child victim's description of what happened and when it occurred need

not be expressed with the same level of sophistication and detail that an adult might use. *Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.); *see also Flanagin v. State*, No. 05-19-00858-CR, 2021 WL 2253502, at *6 (Tex. App.—Dallas June 3, 2021, no pet.) (mem. op., not designated for publication) (although child only specifically described one act of sexual abuse, her testimony that the same "kind of touching" occurred previously provided legally sufficient evidence to support conviction for continuous sexual abuse of a young child).

Here, the jury found that, as charged in the indictment, Henderson committed two or more acts of sexual abuse[6] during a period thirty or more days in duration and at a time when Henderson was seventeen years of age or older and A.B. was younger than fourteen years of age.

Based on our review of the entire record and after considering all the evidence in the light most favorable to the verdict and reasonable inferences therefrom, we conclude a rational jury could have found, beyond a reasonable doubt, that two or more acts of sexual abuse occurred during a period of thirty days or more. *See Aguierre v. State*, No. 05-22-00601-CR, 2024 WL 833445, at *3–5 (Tex. App.—Dallas Feb. 28, 2024, pet. ref'd) (mem. op., not designated for publication); *Marra v. State*, No. 05-22-00520-CR, 2023 WL 6547934, at *5 (Tex. App.—Dallas Oct. 9,

---

[6] The sexual abuse alleged in the indictment included three different acts constituting aggravated sexual assault under Texas Penal Code § 22.021, including causing the penetration of a A.B.'s sexual organ by his finger, causing A.B.'s sexual organ to contact his sexual organ, and causing A.B.'s mouth to contact his sexual organ. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i), (iii), (v).

2023, no pet.) (mem. op., not designated for publication); *see also Buxton*, 526 S.W.3d at 676–77 (holding evidence that abuse occurred regularly from the time victim was five or six years old until she was ten years old was sufficient to prove multiple sex acts occurring thirty or more days apart); *Baez*, 486 S.W.3d at 594–95 (holding evidence was sufficient to prove multiple acts of abuse committed thirty or more days apart when child victim testified that abuse started when she was in sixth grade and that the appellant had touched her "often," "more than once a week," until she moved out of the appellant's house, and when sexual assault nurse examiner testified that the child victim told her that it started happening when the child was "13 to 14 years old"); *Witcher v. State*, 638 S.W.3d 707, 709–710 (Tex. Crim. App. 2022) (evidence sufficient with approximate time frame); *Lewis v. State*, No. 06-21-00021-CR, 2022 WL 630288, at *4–5 (Tex. App. Texarkana—Mar. 4, 2022, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, 143 S.Ct. 740 (2023) (jury could infer from other evidence that abuse occurred on at least two occasions over at least a thirty-day period).

### III. CONCLUSION

We overrule Henderson's sole issue and affirm the trial court's judgment.

/Ken Molberg/

KEN MOLBERG

JUSTICE

230061f.u05

Do Not Publish

TEX. R. APP. P. 47.2(b)

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTHONY CRAIG HENDERSON, Appellant

No. 05-23-00061-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas Trial Court Cause No. 296-81927-2020.
Opinion delivered by Justice Molberg. Justices Breedlove and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 2nd day of December, 2024.