**Opinion filed April 16, 2026**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00124-CR

_____

## NOEL AMADOR-CASTILLO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 16th District Court**
**Denton County, Texas**
**Trial Court Cause No. F22-2149-16**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Noel Amador-Castillo, of the offenses of continuous sexual abuse of a young child (Count One) and the lesser-included offense of attempted indecency with a child by contact (Count Two).[1]  *See* TEX.

---

[1]This appeal was transferred to this court from the Second Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West Supp. 2025).

PENAL CODE ANN. §§ 21.11(a)(1), 22.02 (West 2026). The jury assessed his punishment at confinement for thirty-five years and ten years, respectively, in the Institutional Division of the Texas Department of Criminal Justice with the sentences to run concurrently.

In two issues, Appellant challenges his convictions. He asserts in his first issue that his conviction for the lesser-included offense of attempted indecency violates double jeopardy. In his second issue, Appellant challenges the sufficiency of the evidence to support his convictions. We affirm.

*Background Facts*

At the time of trial in 2024, the victim in this case, I.J., was twenty years old. She testified that, in 2012, when she was approximately eight or nine, she moved to Texas from Virginia with her mother, brother, and Appellant, her stepfather. I.J. testified that the family first lived in the Rockbrook Village apartments in Lewisville.

I.J. testified that Appellant began sexually abusing her at the Rockbrook Village apartments when she was in the fourth grade. She testified that the first incident occurred when Appellant picked her up while she was sleeping and took her to the master bedroom. Appellant gave I.J. his phone and then he took off I.J.'s pants. I.J. testified that Appellant then used his hands and penis to rub her "vagina area." When asked if Appellant would ever try to put his penis inside her vagina, I.J. said that she did not pay attention but that she "did have moments where it would hurt." When asked how many times that Appellant engaged in this conduct with her, I.J. testified that it happened more than twice when she was in the fourth grade. On one occasion at the Rockbrook Village apartments, Appellant asked I.J. to touch his penis but she refused. I.J. also stated that Appellant told her not to tell anyone about his conduct with her.

2

I.J.'s family, along with her maternal grandparents, later moved to a house on Frost Lane in Denton. I.J. testified that Appellant began touching her again at the Frost Lane house when she was in the sixth or seventh grade. I.J. recounted an incident at the Frost Lane house as follows:

> I remember I would go to sleep early for school. And I would be sleeping on my stomach so my back is facing up. And [Appellant] would come in the room, and he would just start touching. He would try to scratch my back. He would try to touch my boobs. But eventually, he would pull my pants down and use his penis around my vagina area again.

I.J. testified that Appellant was on top of her and he tried to lift her shirt, but that she "would stop him"; she testified that Appellant did not touch her breasts. However, I.J. testified that Appellant pulled down her pants and underwear and that he rubbed her vagina with his penis. I.J. also testified that similar incidents occurred at the Frost Lane house "a couple of times."

I.J. and her family later moved to a house in Hickory Creek when she was in the seventh grade. She testified that Appellant continued to attempt to sexually abuse her at the Hickory Creek house but that she would prevent him from doing so. I.J. indicated that Appellant's attempts to touch her stopped when she was thirteen or fourteen.

I.J. testified that she did not make any contemporaneous reports about Appellant's conduct because she did not "want anything to change" with her family and that she was willing to "take it to the grave." However, I.J. eventually made an outcry to her girlfriend in college, C.R. I.J. testified that she did not expect that the information would go past C.R., and she had no intention of going to the police. C.R. convinced I.J. that she should tell her family. I.J. eventually told her brother and her uncle, and then the rest of her family over a period of months. In this regard, I.J. called her brother, who was stationed in Germany, to tell him. C.R. reached out

to I.J.'s uncle on social media to tell him that I.J. needed to talk with him about something. I.J.'s family made the decision to involve the police.

I.J.'s uncle believed I.J., and he believed that the next person to tell in the family was his mother (I.J.'s maternal grandmother), G.P., because she is the leader of the family. He and I.J. met with G.P. at a restaurant to tell her. Afterwards, G.P. convened a family meeting at the family's home without Appellant present in which I.J.'s allegations against Appellant were disclosed to the rest of the family. Upon Appellant's return home, I.J.'s mother confronted Appellant outside of the home. The police were ultimately called that evening to facilitate Appellant's departure from the family's home.

A.P. is I.J.'s maternal grandfather. He testified that he had a habit of waking up at night and checking the house. He testified about a time in the Hickory Creek house that he observed Appellant getting up from the floor by I.J.'s bed in the early morning hours. A.P. testified that when he confronted Appellant about this matter, Appellant told him he was praying over I.J. A.P. found this behavior by Appellant to be unusual.

I.J.'s mother, J.P., testified that I.J. became very isolated and standoffish during middle school, especially with Appellant. J.P. indicated that I.J. avoided Appellant at this time. J.P. discussed the matter with I.J. but I.J. denied that anything was wrong. J.P. was shocked by A.P.'s interaction with Appellant on the night that he observed Appellant inside of I.J.'s room. She confronted Appellant about it at his workplace, but he denied doing anything wrong. Appellant told her that he was just in the doorway and not anywhere close to I.J.'s bed.

Tara Williams is the pediatric nurse practitioner that performed a sexual assault examination on I.J. in May 2022 when I.J. was eighteen. The trial court admitted a transcription of the history that I.J. gave to Williams. I.J. told Williams that Appellant sexually abused her from the fifth grade to her freshman year and that

4

it started when they lived in the Rockbrook Village apartments. I.J. recounted that Appellant would put his penis around her vagina and rub on it. When Williams asked I.J. if Appellant put his penis inside of her vagina, she replied "I think he would try, it would really hurt." When Williams asked I.J. how many times it happened, she replied "[a] lot." In her statement to Williams, I.J. stated that Appellant touched her breasts. When asked if Appellant ever ejaculated, I.J. stated "I am not sure, I know it would get wet down there and I would feel that."

Appellant testified during the guilt-innocence phase of trial. He denied all of I.J.'s allegations. He testified that he loved both I.J. and her brother and that both of them called him "dad" even though he was their stepfather. Both he and I.J. liked soccer and he believed that he helped I.J. to become a collegiate soccer player. Appellant felt that his relationship with I.J. changed after she left for college. He also testified that he confronted I.J. about her relationship with C.R. and that in response, I.J. threatened him by saying, "don't mess with me. You're going to be sorry." Appellant stated that he told the police about this threat that I.J. made to him, but Detective Samy Sanchez with the Denton Police Department, the child abuse investigator that interviewed Appellant, denied that Appellant reported this threat to the police. Appellant also accused A.P. of lying about seeing him near I.J.'s bed when A.P. saw him at night near I.J.'s room.

*Analysis*

*Double Jeopardy*

In his first issue, Appellant contends that his conviction for attempted indecency with a child violates the Fifth Amendment's protection against double jeopardy. He bases this assertion on the contention that the conduct for which the attempted indecency charge was based is encompassed in the same allegations that resulted in his conviction for continuous sexual abuse of a child.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "The protection against double jeopardy includes the protection against multiple punishments." *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015). There is no violation of the Double Jeopardy Clause's prohibition for multiple punishments if the evidence establishes the commission of distinct and separate offenses. *See Langs v. State*, 183 S.W.3d 680, 688 (Tex. Crim. App. 2006).

A double jeopardy claim generally must be raised in the trial court to preserve the error for appellate review. *See Gonzalez v. State*, 8 S.W.3d 640, 643–46 (Tex. Crim. App. 2000). Because of the fundamental nature of the double jeopardy protections, however, a double jeopardy claim may be raised for the first time on appeal or on collateral attack if two conditions are met: (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record, and (2) when enforcement of the usual rules of procedural default serves no legitimate state interest. *Langs*, 183 S.W.3d at 687; *Gonzalez*, 8 S.W.3d at 643. Here, whether a double jeopardy violation occurred can be readily determined from the record to determine whether the evidence showed the commission of distinct and separate offenses. *See Langs*, 183 S.W.3d at 688; *Luna v. State*, 493 S.W.2d 854, 855 (Tex. Crim. App. 1973). Accordingly, Appellant has not waived his double jeopardy claim.

Appellant asserts that his attempted indecency conviction violates double jeopardy because it was a predicate act used to establish his conviction for continuous sexual abuse. Appellant assertion is incorrect.

The State originally charged Appellant by indictment with the single offense of continuous sexual abuse of a young child. The State later obtained an order from the trial court to proceed to trial on an amended indictment that alleged two counts.

6

Count One of the amended indictment charged Appellant with continuous sexual abuse of a young child as follows:

> from on or about the 1st day of September, 2012, through on or about the 28th day of September, 2017, [Appellant] did then and there commit two or more acts of sexual abuse, namely, Indecency with a Child and/or Aggravated Sexual Assault of Child against [I.J.], to-wit: with the intent to arouse or gratify the sexual desire of [Appellant], engage in sexual contact with [I.J.] by touching the genitals of [I.J.] and/or intentionally or knowingly cause the sexual organ of [IJ.] to contact the sexual organ of [Appellant], and at the time of the commission of each of those acts, [Appellant] was at least 17 years of age, and [I.J.] was a child younger than 14 years of age, and not the spouse of [Appellant].

*See* PENAL § 21.02(b). Count Two of the amended indictment charged Appellant with indecency with a child by contact by alleging that on or about September 28, 2017, Appellant, with the intent to arouse or gratify his sexual desire, engaged in sexual contact with I.J., a child younger than fourteen years of age, by touching the breast of I.J. *See id.* § 21.11(a)(1), (c)(1). As noted previously, the jury did not find that Appellant committed indecency by touching I.J.'s breast as charged in the indictment, but rather the jury found Appellant guilty of the lesser-included offense of attempted indecency by touching I.J.'s breast.

The original indictment included an allegation of breast touching as a part of its allegations of continuous sexual abuse; however, the amended indictment made the allegation of breast touching a separate count. We note in this regard that the continuous sexual abuse statute excludes indecency by breast touching as a predicate act. *See* PENAL § 21.02(c)(2); *Ex parte Hernandez*, No. 03-25-00008-CR, 2026 WL 77267, at *5 (Tex. App.—Austin Jan. 9, 2026, no pet. h.) (citing Section 21.02(c)(2) and noting that "indecency by breast-touching is explicitly excluded" as a predicate offense for continuous sexual abuse). "Consequently, continuous sexual abuse and indecency by breast-touching are not the same offense for double-jeopardy purposes." *Ex parte Hernandez*, 2026 WL 77267, at *5 (first citing *Blockburger v.*

7

*United States*, 284 U.S. 299, 304 (1932); and then citing *Ex parte Castillo*, 469 S.W.3d 165, 168 (Tex. Crim. App. 2015)).

While the indictment included an allegation of indecency with a child as a predicate offense, the indictment specifically alleged that Appellant touched I.J.'s genitals and/or caused I.J.'s sexual organ to contact Appellant's sexual organ for that predicate offense; it did not include an allegation of breast touching for Count One. As noted above, indecency by breast touching is expressly precluded as a predicate act for continuous sexual abuse. *See id.* Simply put, continuous sexual abuse and indecency by breast touching require proof of different facts. *See id.* Accordingly, Appellant's conviction for attempted indecency by breast touching was not a conviction for the same offense with respect to Appellant's conviction for continuous sexual abuse of a child. We overrule Appellant's first issue.

*Sufficiency of the Evidence*

In his second issue, Appellant challenges the sufficiency of the evidence supporting his convictions. For Appellant's conviction for continuous sexual abuse, Appellant generally challenges I.J.'s credibility. Appellant also asserts that I.J.'s testimony was not sufficient to establish genital contact. With respect to his conviction for attempted indecency by breast touching, Appellant asserts that there is no evidence of any sexual conduct occurring in 2017, the year alleged with respect to the indecency count.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a

reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The uncorroborated testimony of a child victim is alone sufficient to support a conviction for a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2023); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd); *see also Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's testimony alone was sufficient to establish element of penetration beyond a reasonable doubt). Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required. *Wishert v. State*, 654

S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd) (collecting cases). Thus, the testimony of I.J. alone can be sufficient to support a conviction for continuous sexual abuse of a child or attempted indecency by breast touching. *See id.* (citing *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.)).

With respect to Appellant's challenge to the sufficiency of the evidence for Count Two, he asserts that the indictment alleged conduct occurring in 2017 but that the evidence only showed sexual abuse occurring no later than November 2015. "It is well settled that the 'on or about' language of [a charging instrument] allows the state to prove a date other than the one alleged as long as the date proven is anterior to the presentment of the indictment and within the statutory limitation period." *Loving v. State*, 630 S.W.3d 284, 290 (Tex. App.—Eastland 2020, pet. ref'd) (quoting *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000)). There is no statutory limitations period to indict a person for indecency with a child or attempted indecency with a child. CRIM. PROC. art. 12.01(1)(E) (West Supp. 2025), art. 12.03(a) (West 2015). Accordingly, the fact that Count Two of the indictment alleged a date in 2017 for indecency with a child by breast touching is of no consequence because the evidence showed conduct occurring prior to the date of the indictment.

With respect to Appellant's challenge to the sufficiency of the evidence for Count One, a person commits the offense of continuous sexual abuse of a child if (1) during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse, and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time of the offense. PENAL § 21.02(b). "Sexual abuse" means an act that violates one or more penal laws as specified in Section 21.02(c), including indecency with a child by genital touching and aggravated sexual assault

of a child. *Id.* § 21.02(c)(2), (4); *see also id.* § 21.11(a)(1), § 22.021 (West Supp. 2025).

"To obtain a conviction for continuous sexual abuse of a child, the State must show that the defendant committed at least two acts of sexual abuse against a child younger than 14 years of age during a period of at least 30 days' duration." *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing PENAL § 21.02(b)). "[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." PENAL § 21.02(d). Although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration. *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.); *see Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[T]he offense of continuous sexual abuse of a child does require proof that the last act of sexual abuse occur on at least the 29th day after the day of the first act.").

As relevant to the predicate offenses alleged, a person commits indecency with a child by contact if he "engages in sexual contact with [a] child" younger than fourteen. PENAL §§ 21.02(b), 21.11(a)(1). "Sexual contact" includes "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," if the act is "committed with the intent to arouse or gratify the sexual desire of any person." *Id*. § 21.11(c)(1).

The specific intent to arouse or gratify a person's sexual desire can be inferred from the defendant's conduct, remarks, and all the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.). With respect to a defendant's intent to arouse or gratify his sexual desire, his intent can be

11

inferred from the act itself. *See McKenzie*, 617 S.W.2d at 216; *see also Montgomery v. State*, 810 S.W.2d 372, 396 (Tex. Crim. App. 1990) (addressing contact "that can hardly be attributed to normal parental caretaking"). A defendant instructing a complainant not to reveal an event indicates consciousness of wrongdoing, which in turn leads to the inference that he harbored the specific intent to arouse or gratify his sexual desires. *Montgomery*, 810 S.W.2d at 396.

"Genitals" is not defined in the Penal Code. *See* PENAL §§ 21.01, 21.11. "[T]he word 'genitals' is one of common parlance to which the jury may assign its common meaning." *Stubbs v. State*, No. 02-21-00120-CR, 2022 WL 15053320, at *2 (Tex. App.—Fort Worth Oct. 27, 2022, no pet.) (mem. op., not designated for publication) (citing *Davisonhicks v. State*, No. 07-18-00021-CR, 2019 WL 1890898, at *3 (Tex. App.—Amarillo Apr. 26, 2019, pet. ref'd) (mem. op., not designated for publication)). With respect to a female, the Texas Court of Criminal Appeals has explained that "the statute includes more than just the vagina in its definition; the definition of 'genitals' includes the vulva which immediately surrounds the vagina." *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977).

Appellant contends that I.J.'s testimony was insufficient because she only testified that Appellant touched her *around* her vagina area. Above, we quoted a portion of I.J.'s testimony wherein she testified that Appellant used his penis "around her vagina area." However, in follow-up questions by the State, I.J. testified that Appellant touched her "vagina area," and that there were moments that her vagina would hurt as a result of Appellant's conduct. In other instances, she testified that Appellant's penis was "on [her] vagina area," and she confirmed on direct examination that Appellant "rub[bed] his penis on [her] vagina more than two times over a period of years and years and years." I.J.'s testimony that Appellant contacted her "vagina area" with his penis on multiple occasions spanning more than thirty days constituted sufficient evidence upon which a rational jury could conclude

beyond a reasonable doubt that Appellant committed the predicate offenses of indecency by sexual contact.

Appellant also contends that the evidence was insufficient because I.J.'s credibility "was destroyed." He bases this contention on his perceived lack of consistency in I.J.'s allegations as well as contradictions between her account and those of the State's corroborating witnesses. The primary example of a contradiction was I.J.'s trial testimony that Appellant did not touch her breasts with her reported history to Williams that Appellant touched her breasts. However, the jury resolved this inconsistency in Appellant's favor by rejecting the charged offense of indecency by breast touching and only finding Appellant guilty of the lesser-included offense of attempted indecency by breast touching. In this regard, I.J. testified at trial that Appellant attempted to touch her breasts but that she stopped him.

We defer to the jury's credibility and weight determinations because the jury is the "sole judge" of witnesses' credibility and the weight to be given their testimony. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (quoting *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012)); *see Jackson*, 443 U.S. at 319. As the sole judge of a witness's credibility, "the jury can believe all, some, or none of a witness's testimony." *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). Here, the jury's determination to accept I.J.'s version of the events and to reject Appellant's version was a decision based inherently on its evaluation of their credibility, a decision that is within the jury's sole province to resolve.

We hold that the record before us contains sufficient evidence from which a rational jury could have logically found beyond a reasonable doubt that Appellant was guilty of the offenses of continuous sexual abuse of a young child and attempted indecency by breast touching. Accordingly, we overrule Appellant's second issue.

13

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


April 16, 2026

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.